[Cite as *State ex rel. Pacheco v. Indus. Comm.*, 2017-Ohio-8971.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Alfredo Pacheco, | : | |
| Relator, | : | |
| v. | : | No. 15AP-1033 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on December 12, 2017

**On brief:** *Shapiro, Marnecheck & Palnik,* and *Matthew Palnik,* for relator.

**On brief:** *Michael DeWine,* Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

**On brief:** *Frantz Ward LLP, Maris J. McNamara, Daniel A. Ward,* and *Michael C. Nunnari, Jr.,* for respondent Alcoa.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BRUNNER, J.

{¶ 1} In this original action, relator, Alfredo Pacheco, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("the commission"), to vacate the July 15, 2015 order of its staff hearing officer ("SHO") that denied his request for a new period of temporary total disability ("TTD") compensation beginning April 22, 2013, and to enter an order granting the compensation. At issue is whether Pacheco was entitled to TTD for a period he asserts he was medically unable to work the modified, light-duty job provided him by respondent, Aluminum Co. of America/Cleveland Works ("Alcoa") after he was injured on the job.

{¶ 2} Pacheco asserts that the commission abused its discretion in denying his request for a new period of TTD "based upon a finding that he did not show new and changed circumstances" and he argued that this was "contrary to fact and law." (Nov. 10, 2015 Compl. at ¶ 22.) He further asserts the commission abused its discretion when it denied his TTD application and refused his appeal of the July 15, 2015 SHO order because the evidence in the record established that he was medically unable to work the light-duty job provided by Alcoa. Pacheco argues that the modified, light-duty job was not provided in good faith, and that, legally, he "is not required to show new and changed circumstances to warrant a new period of temporary total disability compensation." (Compl. at ¶ 25.) Pacheco argues that his entitlement to the new period of TTD compensation "has conclusively been established factually and legally," and the commission's denial of his application "was erroneous as a matter of fact and law." *Id.* at ¶ 26.

{¶ 3} We referred this matter to a magistrate of this Court pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law. The magistrate concluded the commission did not abuse its discretion in denying Pacheco a new period of TTD compensation and recommended that this Court deny Pacheco's request for a writ of mandamus.

{¶ 4} Pacheco timely filed objections to the findings of facts and conclusions of law set forth in the magistrate's decision. The commission and Alcoa timely filed separate memoranda opposing Pacheco's objections, asserting that the objections lacked merit, and that the magistrate had decided the matter correctly.

{¶ 5} Having examined the magistrate's decision, conducted an independent review of the record pursuant to Civ.R. 53, and undertaken due consideration of the objections, we overrule Pacheco's first two objections and adopt in part the magistrate's decision as our own. We further sustain Pacheco's third objection and grant mandamus ordering the commission to vacate its September 16, 2013 order denying reconsideration of its order of August 19, 2013 adopting the SHO's July 15, 2015 order. As a matter of law, we find that there existed no evidence in the record that the light-duty job provided to

Pacheco was a legitimate good-faith job under Ohio Adm.Code 4121-3-32(A)(6) and that the commission abused its discretion in denying Pacheco a new period of TTD.

## I.  FACTS AND PROCEDURAL BACKGROUND

{¶ 6}  We note at the outset that the underlying matter was previously before this Court in an original mandamus action that was assigned case No. 14AP-521.  In that action, Pacheco challenged an SHO order issued July 30, 2013 that denied his request for a new period of TTD compensation beginning April 22, 2013. On November 26, 2014, the parties filed a Civ.R. 41(A) stipulation of dismissal.  On December 2, 2014, this Court issued a journal entry of dismissal, which accepted the parties' stipulation of dismissal.

{¶ 7}  On December 24, 2014, an SHO issued an order (1) recognizing the stipulation of dismissal and the parties' agreement, (2) vacating the SHO order dated July 30, 2013 and mailed August 30, 2013, and (3) ordering a new hearing before an SHO to determine whether Pacheco was entitled to the TTD compensation "for the period of April 22, 2013 through June 30, 2013, and to continue, if supported by medical evidence, pursuant to R.C. 4123.56, as requested in his Motion, dated April 30, 2013." (Mar. 4, 2016 Stipulation of Evidence at 244.)  The SHO's order of December 24, 2014  included this language:

> The Staff Hearing Officer is to consider all relevant medical evidence from the stipulated evidence in the case before the 10th District Court of Appeals, 14AP000521, and shall issue an order which either grants or denies the requested compensation, accurately cites the evidence which is the basis for the decision and provides an explanation for the decision in accordance with State ex rel. Mitchell v. Robbins & Meyers, Inc., 6 Ohio St.3d 481 (1983) and State ex rel. Noll v. Indus. Comm., 57 Ohio St.3d 203 (1991). The Staff Hearing Officer's order will be subject to the usual rights of administrative appeal as provided in R.C. 4123.511.

*Id.*

{¶ 8}  Pacheco's case was reheard on July 15, 2015, but by a different SHO.

{¶ 9}  It is undisputed that on May 22, 2012, Pacheco suffered an industrial accident in the course of and arising out of his employment with Alcoa, a self-insured employer under Ohio's workers' compensation laws.  Pacheco having suffered an injury for which insurance coverage existed, that being a "crushing injury right foot; contusion

right foot; complex regional pain syndrome right ankle/foot," Alcoa certified Pacheco's claim and allowed a period of TTD compensation from May 22, 2012 to March 30, 2013. (Emphasis omitted.) (Stipulation of Evidence at 327; Compl. at ¶ 5.)

{¶ 10} It also is undisputed that Pacheco's treating physician, John Wilber, M.D., released him to return to work with restrictions on April 1, 2013. Pacheco was also examined by Dennis A. Glazer, M.D., whose restrictions were similar to Dr. Wilber's but less specific as to what Pacheco *could* do when he returned to work.

{¶ 11} The record indicates Pacheco returned to work at Alcoa beginning April 1, 2013, in a modified light-duty position within the restrictions set by both Dr. Wilber and Dr. Glazer. Nothing in the record documents that Pacheco notified Alcoa upon or after his return to work through Friday, April 19, 2013, that his physical condition affected his ability to perform the light-duty tasks assigned him by Alcoa.

{¶ 12} On Monday, April 22, 2013, Pacheco undertook treatment with another physician, Todd Hochman, M.D., who found Pacheco to be temporarily and totally disabled as of that date. The record indicates that Pacheco did not return to work at Alcoa after the previous Friday, April 19, 2013.

{¶ 13} The SHO who conducted the July 15, 2015 hearing issued an order denying Pacheco's request for the new period of TTD compensation sought beginning April 22, 2013.[1] The SHO found that Pacheco's claim had been previously allowed for "crushing injury right foot; contusion right foot; complex regional pain syndrome right ankle/foot," but that Pacheco's claim for anxiety disorder had been disallowed. (Emphasis omitted.) (Stipulation of Evidence at 327.) The SHO summarized Pacheco's case procedural history, stating:

> Procedurally this issued [sic] comes before the Commission as a result of a mandamus action which was dismissed. The parties by agreement vacated the Staff Hearing Officer order issued 07/30/2013 denying the payment of temporary total disability compensation commencing from 04/22/2013 and agreed that the issue should be sent back to the Commission for a new hearing before Staff Hearing Officer once again on

---

[1] Although the SHO order that is the subject of this mandamus action was mailed on August 6, 2015, Pacheco's Complaint identifies it using the date of the SHO hearing, July 15, 2015. The magistrate's decision to which Pacheco has filed objections continued to identify the order using the "July 15, 2015" date. For continuity purposes, this Court also will identify the SHO order using the "July 15, 2015" date, despite the order not having been effective until August 6, 2015.

the [Pacheco's] appeal filed 06/05/2013 on the issue of temporary total disability compensation commencing from 04/22/2013.

*Id.* at 329. The SHO's July 15, 2015 order denied Pacheco's request for the payment of TTD compensation "commencing 04/22/2013 per the MEDCO-14 Physician's Reports of Work Ability and C-84 Requests for Temporary Total Compensation of Todd Hochman, M.D" be denied. *Id.* In doing so, the SHO found, based on a preponderance of the evidence, a "lack of persuasive medical documentation to support that [Pacheco] could no longer perform his modified job duties as a result of the allowed conditions in the claim." *Id.* at 330.

{¶ 14} On August 19, 2015, Pacheco filed a request for reconsideration of the SHO's July 15, 2015 order. On September 16, 2015, the three-member commission mailed an order denying Pacheco's request. Then Pacheco filed this mandamus action on November 10, 2015.

{¶ 15} The magistrate determined that this case presents two issues:

> (1) whether Alcoa was required to give [Pacheco] a written job offer pursuant to Ohio Adm.Code 4121-3-32(A)(6), and (2) whether the finding by the SHO (July 15, 2015 order) that Dr. Hochman's opinion is unpersuasive that relator was unable to return to any employment as of April 22, 2013 is supported by some evidence on which the SHO relied.

(App'x at ¶ 92.) The magistrate determined that Alcoa was not required to give Pacheco a written job offer pursuant to Ohio Adm.Code 4121-3-32(A)(6). The magistrate also determined that the SHO's finding that Dr. Hochman's opinion is unpersuasive is supported by some evidence "on which the SHO relied." (App'x at ¶ 91.) Based on the evidence in the record and the arguments of the parties, the magistrate concluded that the commission's decision to deny Pacheco's request for a new period of TTD compensation commencing April 22, 2013 was not an abuse of discretion. Accordingly, the magistrate recommended that Pacheco's application for a writ of mandamus be denied.

{¶ 16} Pacheco timely filed objections to the magistrate's decision.

## II. OBJECTIONS TO MAGISTRATE'S DECISION

{¶ 17} Pacheco presents three objections to the magistrate's decision:

> [1.] Relator objects to the Magistrate's Statement of Facts to the extent that it looks at Dr. Hochman's opinion only to the exclusion of Dr. Wilbur's and the inter-relationship of the two treating physicians.
>
> [2.] The Magistrate erred by finding that the Industrial Commission did not abuse its discretion when it determined that Relator, despite having never been found MMI, had to show a functional change, i.e., new and changed circumstances, to merit a new period of temporary total disability after a failed attempt to return to work in a light-duty capacity.
>
> [3.] The Magistrate erred by failing to address whether Alcoa's light-duty "job" assignment of simply sitting in the cafeteria on display for his coworkers to see was a good faith light-duty job, especially in light of its denial of TTD.

On objection, Pacheco restates the arguments he presented in his merit brief that the magistrate previously considered and rejected in reaching his decision.

## III.  LAW AND DISCUSSION

### A.  Standard of Review

{¶ 18} To be entitled to relief in mandamus, Pacheco must establish that he has a clear legal right to relief, that the commission has a clear legal duty to provide such relief, and that he has no plain and adequate remedy in the ordinary course of law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983). To do this, Pacheco must demonstrate that the commission abused its discretion and, "in this context, abuse of discretion has been repeatedly defined as a showing that the commission's decision was rendered without some evidence to support it." *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 20 (1987). To be successful in this mandamus action, Pacheco must show that the commission's decision is not supported by some evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). Conversely, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion, and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Credibility and the weight to be given evidence are clearly within the discretion of the commission as the factfinder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981). Insofar as the magistrate has worded the proposed holding that the "some evidence" in the record must be *the* evidence on which the SHO

actually relied in reaching his or her decision, we decline to adopt that as a statement of the law. Rather, according to *Elliott*, while the commission must state a reason for its decision, there must exist in the record "some evidence" that supports the decision of the commission to avoid a writ of mandamus. *Elliott.*

### B. First Objection

{¶ 19} In reviewing Pacheco's objections to the magistrate's decision, we note that he specifically objects to paragraphs 16 through 18, and paragraphs 22 through 26, of the magistrate's statement of facts, arguing they "omit[] necessary information regarding Mr. Pacheco's medical care." (Sept. 20, 2016 Objs. To Mag.'s Decision at 5.) Pacheco essentially argues that when the law is applied to what he alleges to be an incomplete rendering of the evidence, it is misapplied for the purposes of determining the law of the case. Based on this, Pacheco urges we find, "an abuse of discretion" by "the Magistrate and Industrial Commission" because they "solely look[ed] at the opinion of one of Mr. Pacheco's treating physicians and only a portion of the other." *Id.* at 6.

{¶ 20} The magistrate summarized in his decision the respective roles of the commission and this Court in mandamus:

> The commission alone is responsible for the evaluation of the weight and credibility of the evidence before it. *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987). In mandamus, the role of this court is limited to a determination as to whether there is some evidence to support the commission's decision. *Id.*
>
> Moreover, the commission's order must briefly explain the commission's reasoning in granting or denying workers' compensation benefits, and it must specifically state the evidence relied upon. *Noll.*
>
> Here, it is clear that [Pacheco] is inviting this court to step outside its role in a mandamus review. [Pacheco] invites this court to reweigh the evidence that was before the commission when it rendered its decision (SHO's order of July 15, 2015). This court must decline the invitation.

(App'x at ¶ 100-102.)

{¶ 21} The omission of certain factual matters in evidence that the objector wishes to be considered is within the purview of the factfinder, that is, the commission. The

commission is free to weigh evidence and determine what is credible and important. *Burley.* On mandamus, our role is to determine whether the record contains some evidence that would support the commission's decision. If we find that there is some such evidence, we are not empowered to find an abuse of discretion. *Elliott.*

{¶ 22} The magistrate identified and determined that there was some evidence in the record to support the commission's decision denying Pacheco's application for a new period of TTD. The magistrate detailed in his recitation of facts from the record the diagnosis and treatment of Pacheco's injury by the physicians who examined him, Alcoa's accommodations of the medical restrictions under which Pacheco returned to work, and the commission's consideration of the pertinent facts and the application of the relevant law to Pacheco's application. In doing so, the magistrate discussed the opinions rendered by three physicians who examined Pacheco soon before and after he returned to Alcoa for light-duty work on April 1, 2013.

**Dr. Wilber's Report:**

{¶ 23} The Medco-14 that Dr. John Wilber completed ten days after having examined Pacheco on March 5, 2013 indicated that Pacheco was not released to his former position of employment but could return to "available and appropriate work with restrictions" from April 1 to May 1, 2013. (Stipulation of Evidence at 97.) The magistrate stated:

> On the Medco-14, Dr. Wilber indicated by his marks that [Pacheco] can work 8 hours per day and 40 hours per week; use his left foot to perform repetitive actions to operate foot controls or motor vehicles; no operation of heavy machinery or driving while taking prescribed medications; occasionally lift/carry 10 pounds; occasionally bend, squat, kneel, twist/turn, and reach above shoulder; occasionally drive an automatic vehicle; frequently type on a keyboard; sit for 8 hours with a break; walk for 2 hours with a break; and stand for 2 hours with a break.

(App'x at ¶ 58.)

**Dr. Glazer's Report:**

{¶ 24} The magistrate also discussed restrictions imposed by Dr. Dennis A. Glazer, who at Alcoa's request had also examined Pacheco on March 14, 2013 (after Dr. Wilber's examination but before Dr. Wilber completed the Medco-14 form). Dr. Glazer had

similarly restricted Pacheco to sedentary work with no significant walking or carrying, but did not address what Pacheco could do with his left, uninjured foot:

> It is my opinion within reasonable medical probability that Mr. Pacheco is unable to perform the duties as outlined in the job description. If he would return to work, he would have to have a sedentary job with no walking and no carrying since he would have to walk with crutches. If the trip from the parking lot to his point of work was over several 100 yards, he would have to be brought in with a motorized car or wheelchair. He would be unable to drive since he could not use his right leg for accelerator or breaking.

(Stipulation of Evidence at 96.)

{¶ 25} In reviewing the record, the magistrate noted that Dr. Wilber again examined Pacheco on April 2, 2013, one day after he had returned to work for light duty. The magistrate found that Pacheco had informed Dr. Wilber that Alcoa had Pacheco "sitting in a cafeteria doing nothing with his foot down," a situation that Pacheco indicated was very painful. (Stipulation of Evidence at 103.) The record indicates that Dr. Wilber did have concern that Pacheco was "just sitting with the foot down" and he expressed his hope that Alcoa "will at least let him get it elevated and move around some." *Id.* But there is nothing in the record that indicates Dr. Wilber modified his earlier restrictions on Pacheco's return to work.

**Dr. Hochman's Report:**

{¶ 26} The magistrate's findings of fact discuss the Medco-14 that a third doctor, Dr. Todd Hochman, completed on April 22, 2013, after Pacheco had been back to work for three weeks. Dr. Hochman stated that Pacheco "is temporarily not released to any work, including the former position of employment." (Stipulation of Evidence at 108.) The magistrate outlined the following limitations Dr. Hochman placed on Pacheco's return to work:

> On the Medco-14, Dr. Hochman indicated relator's capabilities and restrictions. Dr. Hochman indicated relator can perform simple grasping with both hands; perform repetitive wrist motion with both wrists; use his left foot to perform repetitive actions to operate foot controls or motor vehicles; no operation of heavy machinery or driving while taking prescribed medications; no lifting/carrying, bending, squatting, kneeling, twisting/turning; occasionally reach

> above shoulder; frequently type on a keyboard; sit six-to-eight
> hours per day with a break; walk for one hour with a break;
> and stand for one hour with a break.

(App'x at ¶ 66.)

{¶ 27} In findings 19 through 21 of his decision, the magistrate discussed a report and two affidavits from Alcoa personnel documenting how the light-duty position Alcoa offered Pacheco satisfied the restrictions set by both Drs. Wilber and Hochman. The affidavits included a statement that Pacheco never reported to anyone in the Alcoa medical department that he had any physical difficulty with his light-duty position during the time he held it.

{¶ 28} We find that Pacheco's first objection goes to the relative weight of opposing evidence, a task that is within the discretion of the commission as the factfinder. *Teece.* While Pacheco asserts that the magistrate impermissibly weighed the evidence by not discussing some of it in reaching his legal conclusions, we find that the magistrate simply performed for the Court its duty to consider whether there is some evidence in the record to support the commission's decision. The magistrate concluded that the record included some evidence on which the commission could rely in denying Pacheco's new period of TTD beginning April 22, 2013. Upon our independent review, we agree with the magistrate.

{¶ 29} We therefore overrule Pacheco's first objection to the magistrate's decision.

## C. Second Objection

{¶ 30} In his second objection, Pacheco argues that the magistrate erred as a matter of law by finding Pacheco did not show "new and changed circumstances" for a new period of TTD compensation to commence. (Compl. at ¶ 22.) This analysis requires a comparison of the Medco-14's completed by each of Pacheco's three doctors—Drs. Wilber, Glazer, and Hochman. Such a comparison ultimately requires not a legal conclusion, but a factual one, to determine whether the commission abused its discretion in denying a new period of TTD. We also note that neither the SHO's order nor the magistrate's decision requires that Pacheco show a functional change or demonstration of "new and changed circumstances." *Id.*

{¶ 31} Instead, the magistrate determined that the SHO, in weighing the medical evidence before her, found unpersuasive Dr. Hochman's opinion that Pacheco was unable to return to any work as of April 22, 2013. In doing so, the magistrate stated:

> The SHO's order of July 15, 2015 explains in some detail the reasoning that supports the SHO's conclusion. The SHO explains that the restrictions provided by Dr. Hochman are "indistinguishable" from the restrictions provided by Dr. Wilber. Significantly, [Pacheco] does not dispute the SHO's observation in comparing the restrictions of Drs. Wilber and Hochman. The SHO pointed out the absence of "any documented worsening of [Pacheco's] objective clinical findings or functional ability."
>
> That is to say, [Pacheco] worked for approximately three weeks at his light-duty job at Alcoa under Dr. Wilber's restrictions and then failed to work further under essentially the same restrictions from Dr. Hochman. The difference being that Dr. Wilber released [Pacheco] to work under the restrictions, but Dr. Hochman opined that relator was unable to do any work.
>
> Clearly, the SHO's order of July 15, 2015 provides a valid basis supported by some evidence for denial of the request for TTD compensation beginning April 22, 2013.

(App'x at ¶ 104-106.)

{¶ 32} Finding that the magistrate appropriately applied the relevant standard, we overrule Pacheco's second objection.

### D. Third Objection

{¶ 33} For his third objection, Pacheco argues that the magistrate erred in finding that Alcoa was not required to reduce to writing its offer of the light-duty job position. Pacheco argues that the magistrate failed to address "the larger issue" of whether the light-duty job was a legitimate good-faith job under Ohio Adm.Code 4121-3-32(A)(6), and whether it was "a warning to other Alcoa workers about what happens when you file a workers' compensation claim." (Objs. to Mag.'s Decision at 11.)

{¶ 34} Pacheco acknowledges in his objection that an injured worker is entitled to TTD compensation when he or she is incapable of returning to his or her former position of employment, and/or when the employer is unable to accommodate medically imposed restrictions. Pacheco contends that Alcoa has a practice of accommodating injured

workers' work restrictions by giving them light-duty jobs that require them to be "on display" in the company cafeteria. He asks this Court to address whether or not Alcoa's "accommodations" qualify as a legitimate good-faith job under the law "to prevent this practice from continuing to occur." (Objs. to Mag.'s Decision at 12.)

{¶ 35} The magistrate found evidence in the record indicating that Pacheco was placed in the cafeteria to accommodate the distance he had to walk from the parking lot to the building and to facilities within the building, and that he was assigned web-based training and filing duties from April 1 through April 19, 2013. The magistrate found that Pacheco's "testimony as to the duties (or lack thereof) of the job Alcoa provided beginning April 1, 2013 goes to the weight of the medical evidence that was before the SHO during the July 15, 2015 hearing." (App'x at ¶ 111.) The magistrate concluded that "the SHO was not required to find that Alcoa's job offer was made in bad faith or that [Pacheco] was unable to continue the job after April 22, 2013." *Id.* at ¶ 112.

{¶ 36} We disagree with the magistrate's conclusion. Based on evidence in the record and mentioned in the magistrate's decision, that being the Medco-14 of Dr. Glazer and the subsequent April 2, 2013 medical notes of Dr. Wilber, placing Pacheco in the lunchroom to do web-based work and filing, rather than at a desk was not suitable employment offered in good faith pursuant to Ohio Adm.Code 4121-3-32(A)(6). Dr. Glazer stated limitations such that, "[i]f the trip from the parking lot to his point of work was over several 100 yards, he would have to be brought in with a motorized car or wheelchair. He would be unable to drive since he could not use his right leg for accelerator or breaking." (Stipulation of Evidence at 96.)

{¶ 37} A "job offer" of light duty to an injured worker pursuant to Ohio Adm.Code 4121-3-32(A)(6) such as a desk job in a lunchroom is neither objectively suitable nor objectively in good faith without evidence that the work can actually be performed in such an environment. To the contrary, the evidence from Pacheco's second visit to Dr. Wilber indicated he was having trouble performing the work in the lunchroom. While Dr. Wilber did not change his restrictions, "[t]he treating physician does not decide whether the injured worker will accept an offer of employment. The injured worker makes that decision and the employer needs to communicate the job offer to the injured worker, not rely on the treating physician or the physician's staff to interpret the job offer for the

worker." *State ex rel. Scott v. Indus. Comm.*, 10th Dist. No. 07AP-1041, 2008-Ohio-4104, ¶ 12. Whether or not Pacheco communicated this to the employer is not the linchpin for Alcoa. The test is an objective one.

> The word "suitable" in Ohio Adm.Code 4121-3-32(B) does not mean "suitable to the employer." To be suitable, the offer must be suitable *from an objective point of view.* * * * The courts are then in a position to determine if the employer's job offer is an offer of truly suitable employment.

(Emphasis added.) *Scott* at ¶ 16. Failure to comply with Ohio Adm.Code 4121-3-32(A)(6), is a failure to offer suitable employment for purposes of Ohio Adm.Code 4121-3-32(B). *Id.* We objectively determine that web-based training and especially filing duties cannot suitably be performed in a lunchroom absent other evidence to prove that such an environment can accommodate the assigned work tasks. There is no evidence in the record that supports an objective conclusion that Pacheco was provided suitable employment pursuant to Ohio Adm.Code 4121-3-32.

{¶ 38} We find contra the conclusion of the magistrate that the credibility of testimony or the weight to be given to the evidence affects whether an employer has made in good faith an offer of suitable employment in this context of TTD and pursuant to Ohio Adm.Code 4121-3-32. The record of this matter fails to provide some evidence to support the commission's findings that Pacheco's light duties were provided in good faith pursuant to Ohio Adm.Code 4121-3-32(A)(6). We hold that the commission has abused its discretion in denying reconsideration of the SHO's July 15, 2015 order and thus mandamus is appropriate.

{¶ 39} We sustain Pacheco's third objection to the magistrate's decision.

## IV. CONCLUSION

{¶ 40} On review of the magistrate's decision, on an independent review of the record, and giving due consideration to Pacheco's objections and Alcoa's responses thereto, we find the magistrate has properly stated the pertinent facts but has not en toto applied the appropriate law. We therefore overrule Pacheco's first and second objections to the magistrate's decision and we sustain his third objection, adopting as our own the magistrate's findings of fact in their entirety and the conclusions of law as to Pacheco's first and second objections, except as stated in paragraph 18 herein. We sustain Pacheco's

third objection and find that the commission abused its discretion in finding some evidence to support a finding that the light-duty position offered to Pacheco was suitable and in good faith pursuant to Ohio Adm.Code 4121-3-32. Accordingly, we grant the requested writ of mandamus and order the commission to vacate its order denying reconsideration of the SHO order for the hearing held July 15, 2015 and mailed August 6, 2015. Because the commission maintains continuing jurisdiction[2] over the claim, it is within the commission's discretion whether to grant TTD or to order a new hearing.

*Objections sustained in part and overruled in part;*
*writ of mandamus granted.*


TYACK, P.J., concurs.
KLATT, J., dissents.

KLATT, J., dissenting.

{¶ 41} Because I would adopt the magistrate's decision in its entirety, I respectfully dissent.

{¶ 42} The relator has the burden to establish that the commission's decision is not supported by some evidence in the record. Where there is evidence in the record supporting the commission's decision, mandamus relief is not warranted. Moreover, the credibility and weight to be given evidence are clearly within the discretion of the commission as the factfinder. Although the majority applies this standard to Pacheco's first and second objections, it ignores it by sustaining his third objection.

{¶ 43} The record contains medical evidence that Pacheco was released to light-duty work. The commission relied on this medical evidence and expressly rejected Pacheco's medical evidence that he was unable to perform any work. In addition, it is undisputed that Pacheco performed his light-duty assignment for approximately three weeks without any indication that the work was inconsistent with his medical restrictions or that he was physically unable to perform the work. There was also evidence in the record that Alcoa placed Pacheco in the cafeteria to accommodate the distance he had to

---

[2] "Presumably, should this court issue a writ of mandamus ordering the commission to vacate its ineligibility finding contained in its SHO's order of August 3, 2007, relator would then have grounds for the commission's exercise of continuing jurisdiction over its SHO's order of August 13, 2009 that denied TTD compensation on eligibility grounds." *State ex rel. Jacobs v. Indus. Comm.*, 10th Dist. No. 11AP-262, 2012-Ohio-3763, ¶ 12.

walk from the parking lot to the building, and to facilities within the building, and assigned him web-based training and filing duties.  This evidence supports the commission's conclusion that Alcoa complied with the medical restrictions and offered Pacheco suitable employment offered in good faith.  The majority simply substitutes its own factfinding determination for that of the commission, rather than applying the some evidence standard.  For this reason, I respectfully dissent.

———————————

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Alfredo Pacheco, | : | |
| Relator, | : | |
| v. | : | No.  15AP-1033 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on August 30, 2016

---

*Shapiro, Marnecheck & Palnik,* and *Matthew Palnik,* for relator.

*Michael DeWine,* Attorney General, and *Eric J. Tarbox,* for respondent Industrial Commission of Ohio.

*Frantz Ward LLP, Maris J. McNamara, Daniel A. Ward,* and *Michael C. Nunnari, Jr.,* for respondent Alcoa.

---

IN MANDAMUS

**{¶ 44}** In this original action, relator, Alfredo Pacheco, requests a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate the July 15, 2015 order of its staff hearing officer ("SHO") that denies relator's request for temporary total disability ("TTD") compensation beginning April 22, 2013, and to enter an order granting the compensation.

Findings of Fact:

**{¶ 45}** 1. On May 22, 2012, relator  injured his right foot when it was caught between two fork lifts while employed with respondent, Alcoa, a self-insured employer

under Ohio's workers' compensation laws.  On that date, relator was transported by EMS to the emergency department of The MetroHealth System where his right foot was assessed as a "[c]rush [i]njury, possible occult fracture."

{¶ 46}  2. On May 29, 2012, relator was examined by John H. Wilber, M.D., at the Department of Orthopedics at MetroHealth.  In his office note, Dr. Wilber noted that relator was being placed in an aircast boot.  Thereafter, Dr. Wilber completed a C-84 based on his May 29, 2012 examination.  In the C-84, Dr. Wilber listed his diagnosis as "crushing injury of foot" and "contusion of foot."  He indicated that relator was unable to return to any employment as of May 29, 2012.  Dr. Wilber estimated a return to work date of August 23, 2012.

{¶ 47}  3. On October 4, 2012, at Alcoa's request, relator was examined by Kevin Trangle, M.D.  In his five-page narrative report, Dr. Trangle states:

> Mr. Pacheco did have a work-related injury for which an allowance request of crushing injury to right foot and contusion of right foot should be honored; these conditions should be allowed.
>
> From a diagnostic perspective, he should have an EMG/NCV study and MRI scan done of the foot and ankle inasmuch as he has not gotten better, still has pain and discomfort, and still has problems with ambulation.
>
> I would not begin physical therapy until these diagnostic tests can be completed inasmuch the results of these tests will define more specifically the type of therapy that may be of benefit to him.

{¶ 48}  4. On November 12, 2012, relator underwent an MRI of his right ankle.  On November 26, 2012, the EMG/NCV study was performed.

{¶ 49}  5. On December 11, 2012, relator returned to see Dr. Wilber.  In his office note, Dr. Wilber states:

> **RESULTS:** The EMG showed no neurologic abnormalities. MRI did show the previous repaired Achilles tendon, but also showed contusion to the area of the midfoot, but no structural abnormalities.

{¶ 50} 6. On January 10, 2013, relator began physical therapy as approved by Alcoa. On the evaluation form for the initial session, it is noted that relator's pain is alleviated when his foot is "[p]ropped-up."

{¶ 51} 7. Relator continued to see Dr. Wilber who continued to find total disability. He extended the estimated return to work date to November 1, 2012 and then again to January 25, 2013.

{¶ 52} 8. On January 22, 2013, relator was examined by Dr. Wilber. In his office note, Dr. Wilber states:

> **ASSESSMENT:** Patient is progressing very slowly but he has only had three sessions of therapy. I anticipate he is going to be somewhat sore. For now we need to just continue to push on with the therapy, working on stretching and strengthening. I did refill his pain medication. We will need to put in for more therapy since he thinks he only has three more sessions.

{¶ 53} 9. Based on the January 22, 2013 examination, Dr. Wilber completed a "Physician's Report of Work Ability" on a form designated as a Medco-14 by the Ohio Bureau of Workers' Compensation. On the form, Dr. Wilber marked a box aside the preprinted statement "[i]njured worker is temporarily not released to any work, including the former position of employment." Dr. Wilber extended the disability to March 31, 2013.

{¶ 54} 10. On March 5, 2013, relator returned to Dr. Wilber for follow-up. In his office note, Dr. Wilber states:

> **PHYSICAL EXAM:** He still has some swelling around his foot and he is hypersensitive over the entire dorsal and planter aspect of the foot. Other than the hypersensitivity, neurovascular status is intact. He has limited motion of the ankle secondary to pain.
>
> **ASSESSMENT:** Patient is not responding to the therapy. We had gotten approval for Pain Management. Thus far he has not been seen by Pain Management. I put in another referral for Pain Management visit. We have asked for more therapy but he is being scheduled to have an IME on the 17th, probably no further approvals will be made until after the IME. We will see him back in four weeks for follow-up. I did refill his Percocet for his pain.

{¶ 55} 11. Ten days later, on March 15, 2013, Dr. Wilber completed another Medco-14. On the form, Dr. Wilber marked the box aside the following preprinted statement: "[i]njured worker is not released to the former position of employment but may return to available and appropriate work with restrictions."

{¶ 56} In the spaces provided, Dr. Wilber indicated the period to be April 1 to May 1, 2013.

{¶ 57} On the Medco-14, Dr. Wilber indicated by his marks that relator can work 8 hours per day and 40 hours per week; use his left foot to perform repetitive actions to operate foot controls or motor vehicles; no operation of heavy machinery or driving while taking prescribed medications; occasionally lift/carry 10 pounds; occasionally bend, squat, kneel, twist/turn, and reach above shoulder; occasionally drive an automatic vehicle; frequently type on a keyboard; sit for 8 hours with a break; walk for 2 hours with a break; and stand for 2 hours with a break.

{¶ 58} 12. Earlier on March 14, 2013, at Alcoa's request, relator was examined by orthopedic surgeon Dennis A. Glazer, M.D. In his six-page narrative report, Dr. Glazer opines:

> It is my opinion within reasonable medical probability that Mr. Pacheco is unable to perform the duties as outlined in the job description. If he would return to work, he would have to have a sedentary job with no walking and no carrying since he would have to walk with crutches. If the trip from the parking lot to his point of work was over several 100 yards, he would have to be brought in with a motorized car or wheelchair. He would be unable to drive since he could not use his right leg for accelerator or breaking.

{¶ 59} 13. On April 1, 2013, relator returned to work in a light-duty capacity at Alcoa.

{¶ 60} 14. On April 2, 2013, relator was examined by Dr. Wilber. In his office note, Dr. Wilber states:

> **HISTORY OF PRESENT ILLNESS:** Alfredo is seen in follow-up for his foot. He has had his IME but we have had no response. We still have no response also for approval for pain management and also for more therapy. He has been back at work this week. They have him sitting in a cafeteria doing nothing with his foot down. He tries to keep it propped up but it is very painful.

**PHYSICAL EXAM:** Foot is still diffusely tender. There is no real swelling. Neurocirculatory status is intact.

**ASSESSMENT:** Patient still has chronic pain in his foot. He needs more therapy and pain management. I am concerned about him just sitting with the foot down. Hopefully they will at least let him get it elevated and move around some. We will see him back in another four weeks. I refilled his Percocet.

{¶ 61} 15. Relator returned to Alcoa for the period April 1 through April 19, 2013. Relator did not report to Alcoa beyond April 19, 2013.

{¶ 62} 16. On April 22, 2013, relator was initially examined by Todd S. Hochman, M.D. Dr. Hochman wrote:

The patient was recently released to try light duty work by Dr. Wilber. The patient has been doing the best he can to remain productive at work light duty but he is having difficulty. He has difficulty getting around because of the right foot pain. He is dependent on analgesic medications. He is in today to establish with me as Physician of Record. For the purpose of today's evaluation, the patient is complaining of right foot pain. The patient also has numbness/tingling. The patient attributes the above complaints to the work injury that occurred on May 22, 2012.

\* \* \*

**PHYSICAL EXAMINATION:**

\* \* \*

With regard to the right foot, there is some swelling about the right foot. There is some discoloration. There is some dystrophy in the nails, especially the 4th and 5th nails. He does have an effusion about the ankle. He is extremely tender inferior to the right medial and lateral malleoli, as well as over the anterior ankle joint. He is extremely guarded with range of motion throughout the right ankle. He ambulated with the assistance of crutches.

\* \* \*

**TX PLAN:**

* * *

> The patient was released to work, light duty, on April 1, 2013. The patient is having difficulty with the regular job duties. He still has quite a bit of pain throughout the right foot. He is ambulating with crutches. He is on narcotic analgesics. He is having difficulty concentrating. I will go ahead and pull him back out of work. A new Medco-14 will be updated.

{¶ 63} 17. On April 22, 2013, Dr. Hochman completed a C-84. On the C-84, Dr. Hochman indicated by his mark that "a new period of temporary total compensation" is being requested. Dr. Hochman indicated that the new period of temporary total disability begins after the last date worked on April 19, 2013.

{¶ 64} 18. On April 22, 2013, Dr. Hochman also completed a Medco-14 on which he opined that relator "is temporarily not released to any work, including the former position of employment."

{¶ 65} On the Medco-14, Dr. Hochman indicated relator's capabilities and restrictions. Dr. Hochman indicated relator can perform simple grasping with both hands; perform repetitive wrist motion with both wrists; use his left foot to perform repetitive actions to operate foot controls or motor vehicles; no operation of heavy machinery or driving while taking prescribed medications; no lifting/carrying, bending, squatting, kneeling, twisting/turning; occasionally reach above shoulder; frequently type on a keyboard; sit six-to-eight hours per day with a break; walk for one hour with a break; and stand for one hour with a break.

{¶ 66} 19. The record contains a two-page "To Whom It May Concern" letter or report from Anna Marie Sesek, PA-C. Sesek states:

> In his March 15, 2013 Medco-14, Dr. Wilber released Alfredo Pacheco to return to work at Alcoa with restrictions. On April 1, 2013, Mr. Pacheco returned to a light duty position at Alcoa. The light duty position was strictly sedentary with no lifting, carrying, pulling/pushing, bending, squatting, kneeling, twisting, turning, reaching above shoulder, and/or climbing. Mr. Pacheco was also able to prop his right leg up on a chair.
>
> On April 1, 2013, Mr. Alfredo Pacheco arrived at the Alcoa medical department for his Return to Work release. A Handicap placard was given to Mr. Pacheco to allow him to

park outside of building 118 from April 1, 2013 until June 1, 2013. This accommodation was made so that Mr. Pacheco would be able to maneuver to the cafeteria that is in building 118. Mr. Pacheco had access to a restroom outside of the cafeteria where he was stationed. It is 84 feet from the parking lot to the front door of building 118. It is 120 feet from the front door to the cafeteria and it is 36 feet from the cafeteria to the restroom.

On April 17, 2013, I conducted Mr. Pacheco's annual physical examination. At the time of the exam, Mr. Pacheco was able to easily provide written responses to a number of questions in connection with his medical history and was able to follow all of my instructions without problem. Mr. Pacheco did not appear to have any difficulty with being able to concentrate/focus and/or comprehend information.

On April 23, 2013, I received Dr. Hochman's C-84 and Medco-14 dated April 22, 2013, wherein he completely disabled Mr. Pacheco for the period of April 22, 2013 through June 30, 2013. As Mr. Pacheco's light duty position at Alcoa was strictly sedentary in nature, I contacted Dr. Hochman's office on April 23, 2013 to discuss his medical basis for completely disabling Mr. Pacheco, and removing him from his light duty position at Alcoa, especially since Dr. Hochman simultaneously set forth restrictions, which were fully accommodated in the light duty position that Mr. Pacheco had been performing for the period of April 1, 2013 — April 19, 2013. When I did not receive a response, I left a detailed voicemail message for Dr. Hochman on his office voice mail. I never received a response from Dr. Hochman or anyone from his office.

Please note that Mr. Pacheco never reported to anyone in the Alcoa medical department that he had any physical difficulty with the sedentary light duty position of employment that he performed beginning April 1, 2013 through April 19, 2013.

{¶ 67} 20. The record also contains the affidavit of Derrick Perkins executed May 24, 2013. The affidavit avers:

[One] At all times pertinent hereto, I have been a Human Resources Generalist at Alcoa, Inc.

[Two] The attached Light Duty Job Description document attached hereto as **Exhibit A** is a true and accurate copy of

the job that Mr. Pacheco performed at Alcoa during the period of April 1, 2013 through April 19, 2013.

(Emphasis sic.)

{¶ 68} 21. Exhibit A attached to the Perkins affidavit states:

Alfredo Pacheco Light Duty Description from April 1, 2013 — April 22, 2013

From April 1, 2013 until April 22, 2013, Alfredo Pacheco was restricted to sedentary work outside of the Manufacturing environment pursuant to the Medco-14 from Dr. Wilber dated 3/15/13 (a copy is attached to this description). At all times during this period, Mr. Pacheco sat in the cafeteria at Alcoa, where he was able to prop his right leg on a chair to ensure comfort in his leg. At various times during this period, he was assigned to complete web based training, which involved using a laptop, and file and sort reports from the Quality organization. At all times Mr. Pacheco was in a strictly sedentary position with no lifting, carrying, pulling/pushing, bending, squatting, kneeling, twisting, turning, reaching above shoulder and/or climbing. His work hours were from 6 a.m. - 2 p.m. with two breaks (50 minutes) and Larry Walters remained his direct supervisor, though he received direction to complete training and file reports by the Safety and Quality organizations respectively. His rate of pay was $19.17 per hour for his position as a Final Operator at job grade 11.

{¶ 69} 22. On April 30, 2013, relator was again seen by Dr. Wilber for follow-up. In his office note, Dr. Wilber made no reference to the fact that relator was no longer working at Alcoa. The office note states:

**HISTORY OF PRESENT ILLNESS:** Alfredo is seen in follow-up for his crush injury to his foot. He has had his IME and I have read this over with him. IME agrees with the fact that he had a crush injury to the foot and all his problems are related to the crush injury. He agrees that he needs further evaluation which includes more therapy and pain management.

I think we need to amend the claim to include regional pain syndrome. He has also been seen by Dr. Todd Hochman who is going to work with him on his case.

**PLAN:** We will work on getting the claim amended. We will get him involved with pain management as soon as possible and I will see him back in four weeks.

{¶ 70} 23. On May 1, 2013, on form C-86, relator filed a motion for the payment of TTD compensation beginning April 22, 2013.

{¶ 71} 24. On May 28, 2013, relator was again seen by Dr. Wilber. In his office note, Dr. Wilber does not reference that relator was no longer working at Alcoa or that he had changed his opinion regarding relator's restrictions:

**HISTORY OF PRESENT ILLNESS:** Alfredo is seen in follow-up for crush injury to his foot. He is getting therapy through Dr. Hochman and he says he is real sore after therapy, but does see some improvement.

**PHYSICAL EXAM:** His foot is still diffusely tender. There is some mild swelling and hypersensitivity. Neurocirculatory status is intact.

**ASSESSMENT:** Patient is improving slowly. He has an appointment for Pain Management in about three weeks. We have tried to push this up but apparently there is no earlier appointment time. Hopefully they can start working on his complex regional pain syndrome as soon as possible. I did refill his medication, continue with Dr. Hochman, and I will see him back in four weeks.

{¶ 72} 25. On June 20, 2013, Dr. Wilber wrote to relator's attorney:

I have reviewed all the information supplied to me which includes my records, office visit of Dr. Todd Hochman on 4/22/13, and records of proceeding dated 5/22/12. To summarize, Alfredo Pacheco was injured at work on May 22, 2012 while working for Alcoa and had his right foot crushed between two electrical pallet jacks. He had severe pain and swelling. He ultimately came under my care but care was delayed for many reasons, most of which is inability to get approval for treatment and to add diagnoses. Because of the swelling and pain, he had been off work because of his injury.

In April a request was made for Alcoa as to whether he could return to a light duty status. Due to the amount of time he was off, I felt it was reasonable to attempt return to work on a light duty status. He did return to work on April 1st where he sat in a room on a plastic chair and was able to elevate the

foot. During this time, his symptoms apparently [became] progressively worse and he was ultimately seen by Dr. Hochman on 4/22/13 where he had significant swelling, an ankle effusion, and severe pain. This was in spite of being on narcotic medications. It was Dr. Hochman's opinion at that time that returning to work was aggravating his symptoms and he recommended that the patient be off duty again.

I saw him on 4/30/2013. It is my opinion that Dr. Hochman's decision to take him off work was appropriate and purely based on his work related injury and his aggravation by returning to work.

At this point he is receiving therapy and pain management, but still having significant problems with pain and swelling, and I think it would be to his determent [sic] to return to work even on a light duty status. I do not believe that work could offer anybody anything lighter than sitting in a chair with the foot elevated but even this aggravated his condition. In view of this I feel that his benefits for temporary, total disability should be reinstituted. I have completed a new Medco-14 reflecting my opinion.

{¶ 73} 26. On June 20, 2013, Dr. Wilber completed a Medco-14 on which he indicated by his mark that relator "is temporarily not released to any work, including the former position of employment from (date): 4/22/13 to 7/22/13."

{¶ 74} 27. Earlier, on May 13, 2013, at Alcoa's request, relator was examined by Paul C. Martin, M.D. In his five-page narrative report, Dr. Martin opines:

It is my medical opinion that additional appropriate treatment would be reasonably expected to result in additional functional/physiologic improvement, and as such, Mr. Pacheco would not at this point be considered as having reached maximum medical improvement. Referral to a pain management physician/facility that is well versed in providing appropriate treatment for this condition is medically indicated and appropriate at this time.

* * *

After having reviewed the written job description for "small aero final operator" and considered Mr. Pacheco's current symptoms and objective clinical findings related to this work injury which include RSD/CRPS and the current allowed

conditions in this claim, it is my medical opinion Mr. Pacheco is not physically capable of returning to his former position of employment without restrictions. In the alternative, it is my opinion that Mr. Pacheco is physically capable of working in a modified work environment consistent with the restrictions delineated on the March 15, 2013, Medco completed by Dr. Wilber. It is not possible at this time to estimate how long such restrictions will be necessary as this will in part be dependent upon Mr. Pacheco's response to the treatment being recommended.

* * *

Based upon review of Mr. Pacheco's own reported history as well as the provided job description of the light duty work which was offered to Mr. Pacheco, as it relates to the currently allowed conditions and the RSD/CRPS, it is my medical opinion Mr. Pacheco has been physically capable of continuing in this capacity since April 1, 2013. This particular job allows Mr. Pacheco to sit, while at the same time being able to elevate his right leg. According to the enclosed description this job is a strictly sedentary position with no lifting, carrying, pulling, pushing, bending, squatting, kneeling, twisting, turning or reaching above shoulder and/or climbing. It is my medical opinion Mr. Pacheco has been physically capable of working in this capacity since April 2013 to the present and continuing.

{¶ 75} 28. On May 28, 2013, Dr. Martin issued an addendum to his report:

It is my medical opinion Mr. Pacheco's claim should be additionally allowed for the condition "complex regional pain syndrome of the right ankle/foot."

* * *

As explained in my response to question #3 in my May 13, 2013, report, it is my medical opinion that based upon the allowed conditions as well as the additional condition of complex regional pain syndrome right foot and ankle, Mr. Pacheco has been physically capable of working in a light duty position that he had returned to Alcoa on April 1, 2013, from April 22, 2013, to current and continuing.

{¶ 76} 29. By letter dated May 29, 2013, Alcoa's counsel certified "Complex Regional Pain Syndrome of the right ankle/foot as an allowed condition of the instant claim."

{¶ 77} 30. On July 12, 2013, Dr. Martin issued another addendum:

> It is my medical opinion Mr. Pacheco could have continued working in the light duty position provided based upon the restrictions noted by Dr. Hochman on the Medco-14 dated, April 22, 2013.
>
> * * *
>
> Based upon the description of this particular light duty position, Mr. Pacheco is allowed to sit with the ability to elevate his right leg for comfort. He is not required to do any amount of lifting, carrying, pushing or pulling, bending[,] squatting, kneeling, twisting, turning, reaching above shoulder or climbing. It is my opinion these are work activities which are certainly no more stressful than what Mr. Pacheco would have been engaged in while at home.
>
> Considering the fact Mr. Pacheco's employer is able to offer such a position that is within Mr. Pacheco's physical capabilities, I do not identify any credible rationale or reasonable medical basis for Dr. Hochman removing Mr. Pacheco from this position on April 22, 2013.

{¶ 78} 31. Earlier, on May 29, 2013, a district hearing officer ("DHO") heard the C-84 request from Dr. Hochman requesting a new period of TTD compensation beginning April 22, 2013. The hearing was apparently not recorded. Following the hearing, the DHO issued an order denying the request for TTD compensation.

{¶ 79} 32. Relator administratively appealed the DHO's order of May 29, 2013.

{¶ 80} 33. On July 30, 2013, an SHO heard relator's administrative appeal from the DHO's order of May 29, 2013. The hearing was recorded and transcribed for the record. The SHO's order vacates the DHO's order. The SHO's order explains:

> The Staff Hearing Officer denies the injured worker's request for payment of temporary total disability compensation for the period 4/22/13 to present (7/30/13). The Staff Hearing Officer finds that the employer provided appropriate restricted duty work through 4/22/13 and, but for the injured worker's 'abandonment' of this position of

employment, he could have continued to avail himself of such restricted duty work.

The Staff Hearing Officer finds that the injured worker was released to return to restricted duty work (see, Dr. Wilbur's [sic] MEDCO-14 of 3/15/13) and did, in fact, return to restricted, sedentary work on 4/01/13. There is no evidence found persuasive that demonstrates that the employer did not comply with the physical restrictions set forth by Dr. Wilbur [sic] during the period during which the injured worker worked in a restricted duty capacity (4/01/13 to 4/21/13). There is no evidence found persuasive that establishes that the employer, during the restricted duty work period in question, prohibited the injured worker from modifying his position, elevating his foot/leg or making other positional changes as would permit him the same degree of adaptation of position as could be accomplished in a non-work environment. Again, the restrictions set forth by his attending physician at the time were complied with.

A review of the office notes of Dr. Wilbur [sic], in the months leading up to his 'release' of the injured worker to return to restricted duty work on 4/1/13, reveals that the clinical findings and complaints remained consistent. With these complaints and findings in mind, Dr. Wilbur indicated that a return to restricted duty work was appropriate. Dr. Wilbur's [sic] concern (4/2/13 note) as to the injured worker sitting "with his foot down" erroneously suggests that the employer compelled the injured worker to remain in such a position. There is no evidence to support such a belief, nor did the injured worker make such an assertion at hearing (7/30/13).

The Self Insured Employer's certification of the claim for the additional condition of "complex regional pain syndrome" (see, letter of 5/29/13) amounted to only an acknowledgement of a condition whose symptoms and impairments were already present. Such certification did not amount to an acknowledgment that some body area or injury, other than that to the injured worker's right foot, was responsible for his symptoms and restrictions. The MEDCO-14s and notes of Dr. Wilbur [sic], prior to 4/22/13, included assessments relating to this condition in their analysis and findings, irrespective of its status (at that time) as an unrecognized condition.

The injured worker asserts that, as of 4/22/13, he became unable to tolerate even the restricted, sedentary duty work

provided by the employer up to that date. The injured worker relies upon the subsequent notes of Dr. Hochman, wherein Dr. Hochman now asserts that the injured worker is unable to perform any type of work activity. The Staff Hearing Officer is not persuaded. The injured worker has and would likely have experienced similar symptoms and restrictions whether he was sedentary at home or sedentary at his place of restricted duty work. That he is in need of ongoing treatment and further analysis and evaluation of his condition is not tantamount to a finding that he is unfit for restricted duty work activity. The 5/13/13 report of Dr. Martin and the 3/14/13 report of Dr. Glazer are relied upon in part.

{¶ 81} 34. On August 22, 2013, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of July 30, 2013.

{¶ 82} 35. On July 7, 2014, relator filed in this court a mandamus action that was assigned case number 14AP-521. In that original action, relator challenged the SHO's order of July 30, 2013.

{¶ 83} 36. On November 26, 2014, the parties, through counsel, filed in this court a Civ.R. 41(A) stipulation of dismissal.

{¶ 84} 37. On December 2, 2014, this court issued a journal entry of dismissal in case number 14AP-521. In its journal entry, this court accepted the parties' stipulation of dismissal.

{¶ 85} 38. On December 23, 2014, an SHO issued an order recognizing the stipulation of dismissal and the parties' agreement. The SHO's order of December 23, 2014 states:

> Pursuant to the Judgement Entry of Dismissal issued by the Tenth Appellate District Court of Appeals, dated 12/02/2014, and the Joint Stipulation of Dismissal filed with the Clerk of Courts of the Franklin County Court of Appeals, dated 11/26/2014, which was filed with the Industrial Commission on 12/01/2014, for the case of State ex rel. Alfredo Pacheco v. Indus. Comm. and Aluminum Co. of America/Cleveland Works, assigned Case No. 14AP0521, it is found that the requested Writ of Mandamus has been dismissed without prejudice. The following order is issued by agreement of the parties:

It is hereby ordered that the order of the Staff Hearing [Officer] dated July 30, 2013, and mailed August 30, 2013, which denied the Injured Worker's application for temporary total disability compensation is vacated.

It is further ordered that this claim is to be referred to the Hearing Administrator to schedule a hearing before a Staff Hearing Officer, to determine whether the Injured Worker is entitled to temporary total disability compensation, for the period of April 22, 2013 through June 30, 2013, and to continue, if supported by medical evidence, pursuant to R.C. 4123.56, as requested in his Motion, dated April 30, 2013.

The Staff Hearing Officer is to consider all relevant medical evidence from the stipulated evidence in the case before the 10th District Court of Appeals, 14AP000521, and shall issue an order which either grants or denies the requested compensation, accurately cites the evidence which is the basis for the decision and provides an explanation for the decision in accordance with State ex rel. Mitchell v. Robbins & Meyers, Inc., 6 Ohio St.3d 481 (1983) and State ex rel. Noll v. Indus. Comm., 57 Ohio St.3d 203 (1991). The Staff Hearing Officer's order will be subject to the usual rights of administrative appeal as provided in R.C. 4123.511.

{¶ 86} 39. On July 15, 2015, an SHO again heard the administrative appeal from the DHO's order of May 29, 2013. The July 15, 2015 hearing was recorded and transcribed for the record.

{¶ 87} 40. Following the July 15, 2015 hearing, the SHO issued an order denying the request for the payment of TTD compensation beginning April 22, 2013. The SHO's order of July 15, 2015 explains:

Procedurally this issued [sic] comes before the Commission as a result of a mandamus [sic] action which was dismissed. The parties by agreement vacated the Staff Hearing Officer order issued 07/30/2013 denying the payment of temporary total disability compensation commencing from 04/22/2013 and agreed that the issue should be sent back to the Commission for a new hearing before Staff Hearing Officer once again on the Injured Worker's appeal filed 06/05/2013 on the issue of temporary total disability compensation commencing from 04/22/2013.

It is the order of the Staff Hearing Officer that the Injured Worker's request for the payment of temporary total

disability compensation commencing 04/22/2013 per the MEDCO-14 Physician's Reports of Work Ability and C-84 Requests for Temporary Total Compensation of Todd Hochman, M.D. is **denied**.

It is the finding of the Staff Hearing Officer that the Injured Worker has failed to sustain his burden of proof in establishing entitlement to the requested temporary total disability compensation.

It is the finding of the Staff Hearing Officer that the Injured Worker was released to return to work at modified duty by his then physician of record John Wilbur [sic], M.D., on 04/01/2013. The Injured Worker did return to work on 04/01/2013 to a modified duty position within his restrictions as set forth by Dr. Wilbur [sic] (MEDCO-14 dated 03/15/2013). The Injured Worker continued to work in the modified duty position through 04/19/2013. The Injured Worker began treating with Dr. Hochman on 04/22/2013 and at that time was temporarily and totally disabled by Dr. Hochman effective on that date. The Staff Hearing Officer finds that the Injured Worker returned to work in a modified light-duty position for approximately three weeks wherein, the Injured Worker performed the light-duty job tasks as required by the Self-Insuring Employer without any documented complaints regarding his physical condition or ability to do the job to the Employer during the relevant time frame.

The Staff Hearing Officer does not find the treatment records, MEDCO-14s, and C-84s of Dr. Hochman persuasive as the restrictions provided by Dr. Hochman are indistinguishable from the restrictions provided by Dr. Wilbur [sic] and the Injured Worker was able to return to work in a modified job under those restrictions. The documentation on file indicates that the Employer complied with the restrictions as set forth by Dr. Wilbur [sic] (05/24/2013 affidavit of Derrick Perkins and statement from Anna Marie Sesek, PAC filed 05/29/2013). A comparison of the treatment records leading up to the Injured Worker's return to modified duty work and his total disability from Dr. Wilbur [sic] and Dr. Hochman note the same clinical findings and subjective complaints without any documented worsening of Injured Worker's objective clinical findings or functional ability (03/05/2013 MEDCO-14 of Dr. Wilbur [sic], 04/22/2013 MEDCO-14 of Dr. Hochman, 04/03/2013

office note of Dr. Wilbur [sic] and 04/22/2013 office note of Dr. Hochman).

Per letter dated 05/29/2013 the Self-Insuring Employer certified claim number 12-825379 for the condition of chronic regional pain syndrome/RSD of the right foot, however, that certification took into account in part medical documentation dating back to at least 2012 (Kevin Trangle, M.D. repo[r]t 10/08/2012) wherein, Injured Worker had documented clinical findings consistent with the diagnosis of chronic regional pain syndrome/RSD that was later confirmed and causally related by Paul Martin, M.D. via a 05/13/2013 narrative report.

Therefore, the Staff Hearing Officer finds that the Self-Insuring Employer's certification of the chronic regional pain syndrome/RSD served as an acknowledgment of symptoms which had been present for months prior to the claim certification.

The Staff Hearing Officer finds based on a review of all the medical documentation on file, evidence presented at hearing and testimony from the Injured Worker memorialized in the transcript filed 07/31/2015 that the Injured Worker has failed to establish by a preponderance of the evidence his entitlement to temporary total disability compensation. The Staff Hearing Officer concludes that there is a lack of persuasive medical documentation to support that the Injured Worker could no longer perform his modified job duties as a result of the allowed conditions in the claim.

(Emphasis sic.)

{¶ 88} 41. On September 16, 2015, the three-member commission mailed an order denying relator's request for reconsideration of the SHO's order of July 15, 2015.

{¶ 89} 42. On November 10, 2015, relator, Alfredo Pacheco, filed this mandamus action.

Conclusions of Law:

{¶ 90} Two issues are presented: (1) whether Alcoa was required to give relator a written job offer pursuant to Ohio Adm.Code 4121-3-32(A)(6), and (2) whether the finding by the SHO (July 15, 2015 order) that Dr. Hochman's opinion is unpersuasive that

relator was unable to return to any employment as of April 22, 2013 is supported by some evidence on which the SHO relied.

**{¶ 91}** The magistrate finds: (1) Alcoa was not required to give relator a written job offer pursuant to Ohio Adm.Code 4121-3-32(A)(6), and (2) the finding by the SHO that Dr. Hochman's opinion is unpersuasive is supported by some evidence on which the SHO relied.

**{¶ 92}** Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

### First Issue

**{¶ 93}** R.C. 4123.56(A) provides that payment of TTD compensation shall not be made for the period "when work within the physical capabilities of the employee is made available by the employer."

**{¶ 94}** Supplementing the statute, Ohio Adm.Code 4121-3-32(A) provides the following definitions:

> (3) "Suitable employment" means work which is within the employee's physical capabilities.
>
> (4) "Treating physician" means the employee's attending physician of record on the date of the job offer, in the event of a written job offer to an employee by an employer.
>
> * * *
>
> (6) "Job offer" means a proposal, made in good faith, of suitable employment within a reasonable proximity of the injured worker's residence. If the injured worker refuses an oral job offer and the employer intends to initiate proceedings to terminate temporary total disability compensation, the employer must give the injured worker a written job offer at least forty-eight hours prior to initiating proceedings. The written job offer shall identify the position offered and shall include a description of the duties required of the position and clearly specify the physical demands of the job. If the employer files a motion with the industrial commission to terminate payment of compensation, a copy of the written offer must accompany the employer's initial filing.

{¶ 95} Ohio Adm.Code 4121-3-32(B)(1)(d) provides that temporary total disability may be terminated "[u]pon the finding of a district hearing officer that the employee has received a written job offer of suitable employment."

{¶ 96} A written offer of suitable employment must clearly identify the physical demands of the job; an offer lacking the requisite clarity cannot be rehabilitated by an employer's verbal assurances that the claimant's limitations would be honored. *State ex rel. Ganu v. Willow Brook Christian Communities*, 108 Ohio St.3d 296, 2006-Ohio-907, ¶ 14, citing *State ex rel. Coxson v. Dairy Mart Stores of Ohio, Inc.*, 90 Ohio St.3d 428 (2000).

{¶ 97} "Ohio Adm.Code 4121-3-32(A)(6) requires an employer to put an offer of light-duty work in writing *only if* the injured worker 'refuses an oral job offer' and the employer intends to seek termination of TTD compensation." (Emphasis sic.) *State ex rel. Jacobs v. Indus. Comm.*, 10th Dist. No. 11AP-262, 2012-Ohio-3763, ¶ 10.

{¶ 98} Undisputedly, relator did not refuse a job offer. Relator accepted Alcoa's oral job offer of light-duty work and he performed the job that was offered from April 1 through April 19, 2013. Thus, the written job offer requirement of Ohio Adm.Code 4121-3-32(A)(6) was not implicated. *Jacobs* at ¶ 10.

## Second Issue

{¶ 99} The commission alone is responsible for the evaluation of the weight and credibility of the evidence before it. *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987). In mandamus, the role of this court is limited to a determination as to whether there is some evidence to support the commission's decision. *Id.*

{¶ 100} Moreover, the commission's order must briefly explain the commission's reasoning in granting or denying workers' compensation benefits, and it must specifically state the evidence relied upon. *Noll.*

{¶ 101} Here, it is clear that relator is inviting this court to step outside its role in a mandamus review. Relator invites this court to reweigh the evidence that was before the commission when it rendered its decision (SHO's order of July 15, 2015). This court must decline the invitation.

{¶ 102} In weighing the evidence before her, the SHO found that the opinion of Dr. Hochman is unpersuasive that relator was unable to return to any employment as

of April 22, 2013. It was Dr. Hochman's opinion, as expressed on his April 22, 2013 C-84 and Medco-14 that relator offered in support of his request for TTD compensation beginning April 22, 2013.

{¶ 103}     The SHO's order of July 15, 2015 explains in some detail the reasoning that supports the SHO's conclusion. The SHO explains that the restrictions provided by Dr. Hochman are "indistinguishable" from the restrictions provided by Dr. Wilber. Significantly, relator does not dispute the SHO's observation in comparing the restrictions of Drs. Wilber and Hochman. The SHO pointed out the absence of "any documented worsening of Injured Worker's objective clinical findings or functional ability."

{¶ 104} That is to say, relator worked for approximately three weeks at his light-duty job at Alcoa under Dr. Wilber's restrictions and then failed to work further under essentially the same restrictions from Dr. Hochman. The difference being that Dr. Wilber released relator to work under the restrictions, but Dr. Hochman opined that relator was unable to do any work.

{¶ 105} Clearly, the SHO's order of July 15, 2015 provides a valid basis supported by some evidence for denial of the request for TTD compensation beginning April 22, 2013.

{¶ 106} Relator endeavors to explain why he quit the light-duty job by alleging that Alcoa's job offer was not in good faith.

{¶ 107} At the July 30, 2013 hearing before the SHO, the following testimony was elicited from relator by his counsel:

> Q. Mr. Pacheco, you were off work from the date of injury until you returned to work on April 1st of this year; is that accurate?
>
> A. Yes.
>
> Q. And when you returned to work on April 1st, can you explain what you were doing for Alcoa?
>
> A. They had me sitting in the cafeteria, just sitting there for eight hours, basically on display.
>
> Q. What kind of chair were you sitting in?

A. They were hard plastic chairs, very uncomfortable, and as I said, just sitting there for eight hours, it was difficult for me.

Q. Was it a high school-type cafeteria chair?

A. Pretty much, yeah, the hard plastic chairs, yeah.

Q. And you were able to elevate your foot on another plastic chair?

A. On a hard plastic chair, yes, which was -- you know, wasn't too comfortable.

Q. Did you have any sort of cushion or pillow to put your foot on?

A. Nothing, no cushions, no pillows, no padding, nothing.

Q. Okay. Were you given any sort of assignments to do?

A. For the -- I was there for three weeks. For the first two weeks, no, just sitting there, and then for about two days they gave me just some paperwork to file or just put in order, simple stuff like that.

Q. And during the time when you were just sitting in the cafeteria, what was happening with the symptoms with respect to your foot?

A. Just from having my foot down, swelling and aching, throbbing, and when I tried elevating it, it just got worse because I was putting it on a hard surface trying to rest it and relieve some of the pressure, and it just got worse.

Q. So it's your testimony that your symptoms actually got worse --

A. Yes.

Q. -- during this time?

A. Yes. I was actually worse than what I did when I got there.

(July 30, 2013 Tr. at 3-4.)

{¶ 108} During the July 15, 2015 hearing before the SHO, the following exchange occurred between the SHO and relator's counsel:

> THE HEARING OFFICER: I guess the only question I have in regards to that is [] it your argument that if a job offer is made in conformance with the law and it is written and it's signed off on by the doctor, it has to be a productive job?
>
> MR. PALNIK: I think that goes to the good faith of the job offer.
>
> THE HEARING OFFICER: Okay.
>
> MR. PALNIK: I don't think that that is a good faith job offer. If we look at the facts -- and there is testimony regarding this in the prior transcript. I don't need to elicit that. They had Mr. Pacheco sitting in the front of the cafeteria --
>
> THE HEARING OFFICER: I understand what Mr. Pacheco was doing. I do understand that.
>
> MR. PALNIK: -- not the back of the cafeteria. He's sitting in the front of the cafeteria so that everybody that walks in through the door to go get lunch or to go eat lunch has to walk by him and see him sitting there doing nothing. He's not -- can't be in a corner. They instructed him where to sit. He had to sit in the front. Not only was he there --
>
> THE HEARING OFFICER: The only question that I had, Mr. Palnik, was whether or not you felt in order for it to be a good faith job offer, it had to be a productive job. That was my only question.
> MR. PALNIK: I think so. I absolutely would think so. Whether he's filing things -- he said for a couple hours during the three weeks, they did have him doing something. I think so. If they don't have any work for him, he should be getting temporary disability, not just sitting around on display. So I think that goes for the good faith aspect of it.

(July 15, 2015 Tr. at 25-26.)

{¶ 109} Here, in his brief, relator argues:

> The reason that Alcoa did not reduce its light-duty job offer to writing is because being paid to sit on display in the cafeteria doing nothing is not a legitimate good faith job. OAC 4121-3-32(A)(6) and [*Ellis Super Valu, Inc. v. Indus.*

> *Comm.,* 115 Ohio St.3d 224, 2007-Ohio-4920]. Meriam-
> Webster's dictionary defines "job" as "the work that a person
> does regularly in order to earn money;" it further defines
> "work" as "a specific task, duty, function, or assignment often
> being a part or phase of some larger activity." "Legitimate" is
> defined as "genuine." Alcoa paying Mr. Pacheco to sit in the
> cafeteria on display to send message to his co-workers
> cannot be classified as a "legitimate job" offered in good
> faith.

(Relator's Brief, at 33.)

{¶ 110} In the magistrate's view, relator's testimony as to the duties (or lack thereof) of the job that Alcoa provided beginning April 1, 2013 goes to the weight of the medical evidence that was before the SHO during the July 15, 2015 hearing.

{¶ 111} Contrary to what relator seems to suggest, the SHO was not required to find that Alcoa's job offer was made in bad faith or that relator was unable to continue the job after April 22, 2013.

{¶ 112} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

> Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign
> as error on appeal the court's adoption of any factual finding
> or legal conclusion, whether or not specifically designated as
> a finding of fact or conclusion of law under Civ.R.
> 53(D)(3)(a)(ii), unless the party timely and specifically
> objects to that factual finding or legal conclusion as required
> by Civ.R. 53(D)(3)(b).