THE STATE EX REL. SEBRING, APPELLANT, *v.* INDUSTRIAL

COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Sebring v. Indus. Comm.,*

123 Ohio St.3d 241, 2009-Ohio-5258.]

*Workers' compensation — Temporary total disability — Claimant's refusal of*
*suitable alternative employment terminates eligibility for continued*
*compensation.*

(No. 2008-1639 — Submitted August 11, 2009 — Decided October 7, 2009.)

APPEAL from the Court of Appeals for Franklin County, No. 07AP-679,

2008-Ohio-3625.

_____

**Per Curiam**.

{¶ 1} At issue is appellant William R. Sebring Jr.'s eligibility for temporary total disability compensation. Sebring sprained his lower back on July 12, 2005 while working for appellee Alro Steel Corporation ("Alro"). He returned to his former position of employment a month later.

{¶ 2} Sebring was laid off on September 6, 2005. He has not alleged that his layoff was due to injury. A month later, Sebring moved to Cheyenne, Wyoming, after his wife accepted a job there.

{¶ 3} Alro — apparently unaware that Sebring had moved — sent a letter to Sebring's Toledo area address on January 9, 2006, informing him that based on his seniority, he was being recalled from layoff. This certified letter was returned unclaimed.

{¶ 4} For reasons that are not clear, Sebring called plant superintendent Jeff Guerra three days later. Guerra informed Sebring of the letter and of his recall. Sebring responded that he would not be coming back to work.

{¶ 5}   In March 2006, Sebring asked appellee Industrial Commission of Ohio to additionally allow his claim for two disc conditions.  That request was granted, and temporary total disability compensation was awarded from November 20, 2005, continuing upon submission of medical proof.

{¶ 6}   Sebring's doctor released him to light-duty work in August 2006.  This release prompted two offers from Alro.  The first was facilitated by CareWorks USA, an organization with an office in Cheyenne, Wyoming.  As outlined in Alro's letter of August 16, 2006:

{¶ 7}   "At this time, no position is available with in [sic] your physician outlined temporary restrictions at [Alro].  Per Company policy, it has been determined that you qualify to participate in the Modified Duty Off-Site [MDOS] Program.  Through CareWorks USA, Alro Steel Corporation has agreements with several non-profit organizations to provide temporary placement for you within your outlined restrictions.

{¶ 8}   "Your CareWorks USA Case Manager * * * has secured a position at a [Cheyenne] non-profit facility that is within your physician['s] outlined restrictions.  This is a temporary placement and the purpose of this temporary placement is to facilitate a timely and safe return to work with the goal of returning to work on-site at Alro Steel Corporation.

{¶ 9}   "You are scheduled to report to work at Goodwill Industries * * * beginning on Friday, August 18th, 2006.  * * * Your CareWorks USA Case Manager will be meeting you at the off-site location on this day. * * *

{¶ 10}   "* * *

{¶ 11}   "Please note that refusal of the MDOS placement may result in termination of all Workers' Compensation benefits."

{¶ 12} When Sebring's case manager contacted him to confirm this meeting, Sebring responded that he was going to Ohio for several weeks and would not be attending his appointment.  Just days later, Alro sent another letter

to Sebring extending an offer for a light-duty job at its Toledo facility. Sebring visited the Toledo plant on September 8, 2006, to pick up a check. Alro offered him a job on the spot, which Sebring refused because he was going to return to Cheyenne.

{¶ 13} Alro moved the commission to terminate temporary total disability compensation based on Sebring's refusal to accept light-duty work. The district hearing officer granted that motion, and in January 2007, a staff hearing officer affirmed:

{¶ 14} "The Hearing Officer GRANTS the request to terminate Injured Worker's Temporary Total Disability benefits as of 9/8/2006, due to the Injured Worker's refusal of a written light-duty job offer.

{¶ 15} "The Hearing Officer finds Injured Worker['s] restrictions are outlined by Dr. Cook * * *. The Hearing Officer finds the written job offer, dated 9/8/2006, is within Injured Worker's restrictions as provided by Dr. Cook. The Hearing Officer further finds that on 9/8/2006, the Injured Worker was personally provided with a copy of the letter and verbally offered the light-duty work. Therefore, the Hearing Officer does not find the Injured Worker's argument that the description of job activity is too vague to be persuasive. The letter of 8/21/2006 clearly indicates that the Injured Worker's work activities would include clerical and Administrative work assistance in the second shift operations at the Toledo Airport Highway Facility that would include but not be limited to general filing and distribution of pick tickets. The Hearing Officer finds that if there was some question or confusion as to whether the job duties were within Injured Worker's restrictions, he could have clarified them at the time he personally saw the Employer who provided him with the written description of work activity.

{¶ 16} "Therefore, the Hearing Officer finds that pursuant to [*State ex rel.*] *Louisiana-Pacific* [*Corp. v. Indus. Comm.* (1995), 72 Ohio St.3d 401, 650

N.E.2d 469], the Injured Worker was provided with a good faith job offer that was within his work restrictions and he refused it. Therefore, Temporary Total Disability benefits should terminate 9/8/2006, the date of the refusal of the job offer."

{¶ 17} After further administrative proceedings concluded, this order became final.

{¶ 18} Sebring filed a complaint in mandamus in the Court of Appeals for Franklin County. Sebring argued, among other things, that Alro's offer of a job at its Toledo facility did not comply with Ohio Adm.Code 4121-3-32(A)(6) because it was not within "reasonable proximity" of his Wyoming home. The court of appeals, speaking through its magistrate, rejected that argument:

{¶ 19} "It is obvious that the purpose of the 'reasonable proximity' rule is to prohibit an employer from compelling its injured worker to relocate his residence as a condition of further employment. It is also obvious that the rule was not promulgated for the purpose of allowing an injured worker to move his residence to a location not in reasonable proximity to the job site of his former position of employment such that the employer cannot offer employment within reasonable proximity of the injured worker's new residence.

{¶ 20} "Relator's suggested interpretation of 'residence' turns a rule designed to protect injured workers into one that can be used by an injured worker to prevent the employer from exercising its right under [R.C. 4123.56(A)] to make an offer of suitable employment. In short, relator's suggested interpretation of the word 'residence' in Ohio Adm.Code 4121-3-32(A)(6) is inconsistent with the above-noted provision of R.C. 4123.56(A) which provides to an employer the right to offer suitable alternative employment that will eliminate the payment of TTD compensation." Id. at ¶ 45-46.

{¶ 21} The court concluded:

**{¶ 22}** "Relator must accept responsibility for his decision to move his residence to a location that makes it difficult to accept an offer of suitable alternative employment at the location of his former position of employment.

**{¶ 23}** "Even though the economic reality of his spouse's employment may have prompted the relocation of his residence, relator cannot shift to the employer the responsibility of accommodating the difficulty of his reporting to work at Toledo, Ohio, when his residence is at Cheyenne, Wyoming." Id. at ¶ 54-55.

**{¶ 24}** The denial of a writ of mandamus has prompted Sebring's appeal to this court as of right.

**{¶ 25}** Sebring issues two challenges to the commission's decision. The first arises from *State ex rel. Ellis Super Valu, Inc. v. Indus. Comm.*, 115 Ohio St.3d 224, 2007-Ohio-4920, 874 N.E.2d 780, which clarified that voluntary abandonment and refusal of suitable alternative employment are separate and distinct employer defenses to the payment of temporary total disability compensation. Sebring believes that this case involves refusal of suitable alternative employment. Pointing to the order's citation of *Louisiana-Pacific,* he asserts that the commission confused the two defenses by engaging in a voluntary-abandonment analysis. This proposition fails.

**{¶ 26}** The January 2007 order does cite *Louisiana-Pacific,* 72 Ohio St.3d 401, 650 N.E.2d 469 – the seminal decision on voluntary abandonment. The order's discussion, however, focuses solely on Alro's September 2006 employment offer. It does not mention voluntary abandonment or the three-pronged test that *Louisiana-Pacific* created. The commission's mistaken reference to *Louisiana-Pacific* is inconsequential, given the substance of the order.

**{¶ 27}** Sebring also asserts that Alro's employment offer did not satisfy Ohio Adm.Code 4121-3-32. Ohio Adm.Code 4121-3-32(B)(2)(d) reiterates that

temporary total disability compensation can be stopped if the hearing officer concludes that "the employee has received a written job offer of suitable employment." A job offer," is "a proposal, made in good faith, of suitable employment *within a reasonable proximity of the injured worker's residence*." (Emphasis added.) Ohio Adm.Code 4121-3-32(A)(6).

{¶ 28} The commission terminated temporary total disability compensation based on Sebring's refusal of light-duty work at Alro's Toledo facility. Sebring, however, lived in Wyoming by that time, so the proffered employment, on that occasion, was not reasonably proximate to his home. This circumstance has prompted vigorous debate among the parties. Appellees stress that Sebring voluntarily chose to relocate and must accept the repercussions of that decision, both positive and negative. The court of appeals agreed, stating that the employer is not required to accommodate an employee who has moved so far away that reporting to work is problematic. Sebring counters that appellees' position will allow employers to terminate the temporary total disability compensation of relocated claimants by offering them positions that they know the individual is geographically unable to accept.

{¶ 29} We find it unnecessary to address these arguments at the present time. Alro secured jobs for Sebring both in Toledo and in Cheyenne, and Sebring refused both. Regardless of which place is deemed to be his residence for purposes of Ohio Adm.Code 4121-3-32(A)(6), Sebring refused job offers that were proximate to each. Thus, there is no need for analysis of this issue to proceed further.

{¶ 30} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, and CUPP, JJ., concur.

LANZINGER, J., not participating.

_____

Gallon, Takacs, Boissoneault & Schaffer Co., L.P.A., and Theodore A. Bowman, for appellant.

Richard Cordray, Attorney General, and Sandra E. Pinkerton, Assistant Attorney General, for appellee Industrial Commission.

Law Offices of Margelefsky & Mezinko, L.L.C., and Vincent S. Mezinko, for appellee Alro Steel Corporation.

_____