[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Pacheco v. Indus. Comm.*, Slip Opinion No. 2019-Ohio-2954.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-2954

THE STATE EX REL. PACHECO, APPELLEE AND CROSS-APPELLANT, *v*. INDUSTRIAL COMMISSION ET AL., APPELLANTS AND CROSS-APPELLEES.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Pacheco v. Indus. Comm.*, Slip Opinion No. 2019-Ohio-2954.]

*Workers' compensation—Temporary-total-disability compensation—Court of appeals correctly determined that some evidence in record supported Industrial Commission's finding that claimant was medically able to perform light-duty job that employer made available to him—Court of appeals erred in determining whether job was objectively offered in good faith and in issuing writ of mandamus on that basis ordering commission to grant claimant's request or hold new hearing—Court of appeals' judgment affirmed in part and reversed in part and limited writ issued ordering commission to determine whether employer offered light-duty job in good faith and to issue new order.*

(Nos. 2018-0099 and 2018-0118—Submitted February 19, 2019—Decided July 23, 2019.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Franklin County, No. 15AP-1033, 2017-Ohio-8971.

_____

**Per Curiam.**

{¶ 1} These consolidated appeals relate to the Industrial Commission's denial of temporary-total-disability ("TTD") compensation to Alfredo Pacheco. The appeals require us to decide whether the Tenth District Court of Appeals erred by concluding that (1) the commission did not abuse its discretion when it found that Pacheco was medically able to perform light-duty work offered by his employer, Aluminum Company of America ("Alcoa"), and (2) Alcoa did not make the light-duty job offer in good faith—a question that the commission did not address. We agree with the Tenth District's determination that some evidence in the record supported the commission's finding that Pacheco was medically able to perform the light-duty job, but we conclude that the Tenth District should not have determined whether the job was offered in good faith. Accordingly, we affirm in part and reverse in part the Tenth District's judgment, and we issue a limited writ ordering the commission to determine in the first instance whether Alcoa offered the job in good faith and to issue a new order.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} In May 2012, Pacheco sustained an injury while working for Alcoa. Alcoa certified his workers' compensation claim for foot and ankle conditions. Pacheco was medically unable to return to his original position, and he received TTD compensation through March 30, 2013.

{¶ 3} Alcoa offered Pacheco sedentary light-duty employment beginning April 1, 2013. Pacheco accepted the offer and worked in the light-duty position for three weeks. He claims that during that time, Alcoa required him to sit in the

cafeteria and gave him almost no work to do. Pacheco then saw a new doctor, who completed a report stating that Pacheco was not released to work but also stating work restrictions that were similar to those under which Pacheco had accepted the light-duty job—including the ability to sit for up to eight hours and to use a computer. Pacheco submitted a request for TTD compensation commencing on April 22, which Alcoa denied.

**{¶ 4}** Pacheco sought a determination by the commission, which denied the request for TTD compensation, based on Pacheco's abandonment of the light-duty position. Pacheco filed a mandamus complaint in the Tenth District, arguing that the commission had improperly applied the voluntary-abandonment doctrine. Before the Tenth District ruled on the complaint, the commission vacated its denial of Pacheco's request for TTD compensation and the parties stipulated to a voluntary dismissal of the mandamus action without prejudice.

**{¶ 5}** The commission held a new hearing and again denied Pacheco's request for TTD compensation, this time based on a lack of persuasive medical documentation that he could not perform the light-duty position at Alcoa during the time period for which he sought TTD compensation. Pacheco filed a new mandamus complaint in the Tenth District. The court of appeals concluded that some evidence in the record supported the commission's finding that the light-duty job was within Pacheco's medical restrictions. 2017-Ohio-8971, ¶ 27-29, 31-32, 40, 91. But the court also concluded that the job stationing Pacheco in the cafeteria with little work was objectively not offered in good faith. *Id*. at ¶ 37, 40. The court therefore issued a writ of mandamus ordering the commission to either grant Pacheco's request for TTD compensation or hold a new hearing. *Id*. at ¶ 40.

**{¶ 6}** The commission appealed that judgment, and Pacheco filed a cross-appeal. Alcoa filed its own appeal, which was assigned a separate case number. On the joint motion of all parties, this court consolidated the appeals. 153 Ohio St.3d 1499, 2018-Ohio-4205, 109 N.E.3d 1256.

## II. ANALYSIS

{¶ 7} When reviewing a claim for a writ of mandamus in a workers' compensation case, a court's role is to determine whether the commission has abused its discretion. *See State ex rel. Packaging Corp. of Am. v. Indus. Comm.*, 139 Ohio St.3d 591, 2014-Ohio-2871, 13 N.E.3d 1163, ¶ 29. The commission is the exclusive finder of fact and has sole responsibility to evaluate the weight and credibility of the evidence. *State ex rel. Perez v. Indus. Comm.*, 147 Ohio St.3d 383, 2016-Ohio-5084, 66 N.E.3d 699, ¶ 20. So long as the commission's order is based on some evidence in the record, a court should not find an abuse of discretion. *Id*.; *Packaging Corp.* at ¶ 29.

{¶ 8} Pacheco, Alcoa, and the commission each assert two propositions of law.[1] All the propositions relate to two issues: (1) whether the court of appeals erred by concluding that some evidence supported the commission's finding that Pacheco was medically able to perform the light-duty position that Alcoa made available and (2) whether the court of appeals erred by concluding that Alcoa's job offer was objectively not made in good faith and that Pacheco may therefore be entitled to TTD compensation.

### A. *Ability to Perform the Light-Duty Job*

{¶ 9} R.C. 4123.56(A) provides that TTD compensation shall not be paid for any period during which "work within the physical capabilities of the employee is made available." Both of Pacheco's propositions of law challenge the court of appeals' determination that the commission did not abuse its discretion by determining that he was capable of performing the available light-duty position at Alcoa.

{¶ 10} Specifically, Pacheco asserts that (1) the court of appeals placed too much emphasis on the opinion of one of his doctors while ignoring the opinion of

---

1. The commission asserts one general proposition of law with two specific subparts, which we treat as two distinct propositions.

his other doctor and (2) the court of appeals should have found that the commission abused its discretion by requiring him to show "new and changed circumstances" to be entitled to TTD compensation. Alcoa and the commission, in support of their respective first propositions of law, counter that the court of appeals correctly determined that some evidence in the record supported the commission's finding that Pacheco was medically able to perform the light-duty job.

{¶ 11} The role of a court reviewing a decision of the commission in a mandamus action is to determine whether some evidence in the record supported the commission's decision. *Perez*, 147 Ohio St.3d 383, 2016-Ohio-5084, 66 N.E.3d 699, at ¶ 20. The commission had before it the reports of three physicians, including March 2013 reports from John H. Wilber, M.D., and Dennis A. Glazer, M.D., and an April 2013 report from Todd S. Hochman, M.D. Pacheco returned to work on April 1, 2013, based on Dr. Glazer's and Dr. Wilber's reports, which indicated that he could perform sedentary work, including typing. The tasks Alcoa asked him to perform during his three weeks in the light-duty position included completing web-based training on a laptop computer and sorting paperwork. On April 22, he saw Dr. Hochman, who despite checking a box on the report form indicating that Pacheco was temporarily not released to any work, nevertheless also indicated that Pacheco could perform simple grasping, perform repetitive wrist motions, use his left foot to operate vehicles, frequently type on a keyboard, sit six to eight hours a day with a break, walk for one hour with a break, and stand for one hour with a break. The record also contains statements from Alcoa personnel indicating that the light-duty position was within Pacheco's physical capabilities as described by both Dr. Wilber (before Pacheco returned to work) and Dr. Hochman (on April 22) and that during the three weeks that Pacheco worked the light-duty job, he never told anyone at Alcoa that he could not perform the job. This evidence supports the commission's determination that "the restrictions provided by Dr. Hochman are indistinguishable from the restrictions provided by Dr. Wilbur [sic]

and the Injured Worker was able to return to work in a modified job under those restrictions" and its conclusion that "there is a lack of persuasive medical documentation to support that the Injured Worker could no longer perform his modified job duties as a result of the allowed conditions in the claim."

{¶ 12} Pacheco argues that the commission "weighed the opinion of Dr. Hochman in an evidentiary vacuum" and that it erred by "solely look[ing] at the opinion of one of Mr. Pacheco's treating physicians and only a portion of the other." To the contrary, the commission expressly considered Dr. Hochman's report in the context of the other evidence and specifically stated that it had reviewed "all the medical documentation on file." *See State ex rel. Metz v. GTC, Inc.*, 142 Ohio St.3d 359, 2015-Ohio-1348, 30 N.E.3d 941, ¶ 14 ("The commission is not required to list all the evidence that it considered in its order, but only that which it relied upon to reach its conclusion"). More to the point, by inviting this court to find error in the commission's weighing of Dr. Hochman's opinion and its finding certain medical reports more reliable than others, Pacheco is asking us to step into the commission's role as fact-finder and to reweigh the evidence. We decline this improper request. *See Perez*, 147 Ohio St.3d 383, 2016-Ohio-5084, 66 N.E.3d 699, at ¶ 20.

{¶ 13} We likewise reject Pacheco's argument that the commission applied a "new and changed circumstances" standard and thereby abused its discretion. The commission expressly undertook the correct inquiry under R.C. 4123.56(A)— whether the work Alcoa had offered was within Pacheco's physical capabilities. Nothing forbade the commission from considering, as part of that inquiry, whether Pacheco's capabilities after April 22 were the same as they were on April 1, when he was released to—and began performing—the same light-duty job that was available after April 22.

{¶ 14} Finally, though he does not present it as a separate proposition of law, Pacheco asserts a challenge to the commission's decision on public-policy grounds. Specifically, he asserts that the commission's decision means that a

physician can never change her opinion about a claimant's fitness for a light-duty job and that future claimants can never try a light-duty job to test their ability to perform it without becoming locked into the position. We reject these arguments, because the commission's determination that Pacheco's capabilities were the same both before and after April 22 does not preclude a finding in a different case that the claimant's capabilities have changed and that new medical restrictions inconsistent with the light-duty job should be imposed.

### B. Good Faith

{¶ 15} Pacheco argued to the commission that the availability of a light-duty job sitting in Alcoa's cafeteria doing nearly nothing should not render him ineligible for TTD compensation, because the job offer was not made in good faith. Specifically, Pacheco claimed that by making him sit idly in public view, Alcoa was placing him on display as a warning to other employees. Alcoa countered that it gave Pacheco productive work to do and that it stationed him in the cafeteria because it was close to the parking lot and the restroom, in conformity with a medical restriction stating that Pacheco could walk no more than several hundred yards.

{¶ 16} The commission did not address Pacheco's lack-of-good-faith argument. *See State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203, 567 N.E.2d 245 (1991), syllabus ("In any order of the Industrial Commission granting or denying benefits to a claimant, the commission must specifically state what evidence has been relied upon, and briefly explain the reasoning for its decision"). The court of appeals nevertheless made the determination that Alcoa's offer of "a desk job in a lunchroom" was "no[t] objectively in good faith without evidence that the work can actually be performed in such an environment." 2017-Ohio-8971 at ¶ 37.

{¶ 17} As their respective second propositions of law, the commission and Alcoa assert that the court of appeals erred and that Alcoa's offer of light-duty

employment *was* made in good faith. Amici curiae, Ohio Chamber of Commerce and Ohio Self-Insurers Association, agree. Pacheco counters that the court of appeals correctly determined that the job was not offered in good faith. Alcoa's second proposition of law asserts that Ohio Adm.Code 4121-3-32(A)(6)'s good-faith requirement does not apply in this case. We hold that the good-faith requirement applies and that whether Alcoa met that requirement is a question that the commission must determine in the first instance, *State ex rel. Ellis Super Valu, Inc. v. Indus. Comm.*, 115 Ohio St.3d 224, 2007-Ohio-4920, 874 N.E.2d 780, ¶ 13.

{¶ 18} Like this case, *Ellis Super Valu* involved an application for a new period of TTD compensation encompassing time during which light-duty work within the claimant's medical restrictions was available to the claimant but had been refused. The claimant in *Ellis Super Valu* had injured her shoulder and was temporarily unable to return to her former position. Approximately three and a half weeks after the injury, the claimant's employer offered her light-duty work within her medical restrictions that would have required her to work the evening shift instead of her usual day shift. The claimant refused the offer because her children could not be left alone in the evening, and she filed an application for TTD compensation. A month and a half later, a district hearing officer awarded TTD compensation for the period between the claimant's injury and her refusal of the employer's offer of light-duty work. A staff hearing officer reversed that decision in part, finding that the claimant was entitled to TTD compensation for the period during which light-duty work was on offer but had not been accepted by the claimant, because she had a valid excuse for turning down the offer.

{¶ 19} The employer in *Ellis Super Valu* sought a writ of mandamus ordering the commission to vacate the award for the period during which the claimant had refused light-duty work. While R.C. 4123.56(A) provides that TTD compensation shall not be awarded when work within the claimant's physical capabilities is made available by the employer, and there was no dispute that the

offered light-duty job was within the claimant's medical ability, this court explained that R.C. 4123.56(A) must be read in pari materia with Ohio Adm.Code 4121-3-32(A)(6)'s definition of "job offer" as a proposal "made in good faith." *Ellis Super Valu* at ¶ 13. Because the existence of good faith was a factual determination to be made by the commission, which had not addressed the issue, we granted a limited writ ordering the commission to further consider the claim and issue an amended order. *Id.* at ¶ 13-14.

{¶ 20} Alcoa does not cite or discuss *Ellis Super Valu*. Rather, it argues that the good-faith requirement does not apply in this case because Pacheco initially *accepted* Alcoa's light-duty job offer. In support of this argument, Alcoa cites two Tenth District decisions, *State ex rel. Adkins v. Indus. Comm.*, 10th Dist. Franklin No. 07AP-975, 2008-Ohio-4260, and *State ex rel. Jacobs v. Indus. Comm.*, 10th Dist. Franklin No. 11AP-262, 2012-Ohio-3763, *aff'd*, 139 Ohio St.3d 86, 2014-Ohio-1560, 9 N.E.3d 999.

{¶ 21} In *Adkins*, the claimant accepted an offer of light-duty employment but then failed to report for work without explanation and was terminated for violating the employer's absenteeism policy. The claimant argued that the employer had failed to meet the requirement, set forth in *State ex rel. Coxson v. Dairy Mart Stores of Ohio, Inc.*, 90 Ohio St.3d 428, 739 N.E.2d 324 (2000), that a written offer of suitable employment clearly identify the physical demands of the job. *Adkins* at ¶ 57-58. The Tenth District rejected this argument, stating, "Acceptance of the job offer precludes a challenge that the offer was insufficient." *Id.* at ¶ 59.

{¶ 22} In *Jacobs*, the claimant accepted a light-duty-job offer and worked for one hour, then complained of pain and left, telling her employer that she was going to see her doctor. But the claimant did not see her doctor and never returned to work, resulting in her termination for violating the employer's absenteeism policy. The claimant argued that the employer had failed to present her with a

written job offer as required by Ohio Adm.Code 4121-3-32(A)(6). The Tenth District rejected this argument, explaining that Ohio Adm.Code 4121-3-32(A)(6) requires a written job offer only if the claimant has rejected an oral job offer, which had not occurred. *Jacobs* at ¶ 10.

**{¶ 23}** Alcoa overlooks the fact that both *Adkins* and *Jacobs* were voluntary-abandonment cases in which the employees were terminated for violating absenteeism rules. A voluntary abandonment of employment that severs the cause-and-effect relationship between the claimant's industrial injury and her wage loss renders the claimant ineligible for TTD compensation. *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305, 776 N.E.2d 51, ¶ 36-38. A voluntary abandonment of employment can occur when an employee resigns her employment for reasons unrelated to her industrial injury, *State ex rel. James v. Wal-Mart Stores, Inc.*, 149 Ohio St.3d 700, 2017-Ohio-1426, 77 N.E.3d 952, ¶ 16, 18, or when an employee is terminated for violating a written, clearly defined work rule that the employee knew or should have known was a dischargeable offense. *McCoy* at ¶ 8, citing *State ex rel. Louisiana-Pacific Corp. v. Indus. Comm.*, 72 Ohio St.3d 401, 403, 650 N.E.2d 469 (1995).

**{¶ 24}** As this court explained in *Ellis Super Valu*, voluntary abandonment of employment and refusal of suitable alternate employment are separate and distinct defenses to a request for TTD compensation. 115 Ohio St.3d 224, 2007-Ohio-4920, 874 N.E.2d 780, at ¶ 6, 8-9. The former revolves around "why the claimant has not returned to his former position of employment." *Id*. at ¶ 9. By contrast, the latter's relevant inquiry is "why the claimant has rejected an offer to ameliorate the amount of wages lost. *This, in turn, can involve considerations of*, for example, employment suitability, the legitimacy of the job offer, or *whether the position was offered in good faith*." (Emphasis added.) *Id*.

**{¶ 25}** In line with this distinction, the sufficiency of the light-duty job offers in *Adkins* and *Jacobs* was irrelevant not just because the claimants accepted

the jobs that their employers offered but because the claimants then took actions that severed the causal connection between their injuries and their wage loss. *Adkins* itself explains that the abandonment of the claimant's employment was the key factor distinguishing that case from *Ellis Super Valu*:

> Unlike the *Ellis Super Valu* case, there was no issue here as to whether Spherion's job offer was made in good faith, or whether relator had legal justification for refusal. Relator accepted Spherion's job offer. Acceptance required relator to follow Spherion's work rules.
>
> Relator's failure to report to her light-duty job on August 26, 2002 led Spherion to terminate her employment because of the rule violation. That is, relator's violation with respect to the light-duty job prevents her from ever returning to her former position of employment as a laborer with Spherion. Thus, it can be said that relator abandoned her former position of employment by violating the work rule after accepting alternative employment.

*Adkins*, 2008-Ohio-4260, at ¶ 54-55. After it decided *Adkins*, the Tenth District cited *Ellis Super Valu* and recognized the applicability of Ohio Adm.Code 4121-3-32(A)(6)'s good-faith requirement in a case in which, as here, the claimant accepted a light-duty position and then stopped working it due to a belief that the light-duty job aggravated the claimant's medical condition. *State ex rel. Akron Paint & Varnish, Inc. v. Gullotta*, 10th Dist. Franklin No. 09AP-492, 2010-Ohio-1321, ¶ 36-40, *aff'd*, 131 Ohio St.3d 231, 2012-Ohio-542, 963 N.E.2d 1266.

{¶ 26} Alcoa has not raised the affirmative defense of voluntary abandonment in these proceedings, and the record contains no evidence showing that Pacheco's employment relationship with Alcoa has ended. Pacheco's refusal

to continue working in the light-duty position based on Dr. Hochman's report was not tantamount to a voluntary resignation of his *employment* with Alcoa. And the record contains no evidence that Alcoa terminated Pacheco's employment as a result of his refusal. We therefore have no basis to find that a voluntary abandonment of employment has severed Pacheco's ability to eventually return to his former position. Accordingly, *Adkins* and *Jacobs* are inapplicable and do not obviate the application of the good-faith requirement under *Ellis Super Valu*.

{¶ 27} As in that case, reading R.C. 4123.56(A) in pari materia with Ohio Adm.Code 4121-3-32(A)(6), Alcoa's offer of light-duty work rendered Pacheco ineligible for TTD compensation only if the offer was made in good faith. The existence of good faith is a factual determination that must be made by the commission in the first instance. *Ellis Super Valu*, 115 Ohio St.3d 224, 2007-Ohio-4920, 874 N.E.2d 780, at ¶ 13. We therefore issue a limited writ ordering the commission to make that determination and to issue an amended order. *See State ex rel. Moore v. Internatl. Truck & Engine*, 116 Ohio St.3d 272, 2007-Ohio-6055, 878 N.E.2d 19, ¶ 40-41.

### III. CONCLUSION

{¶ 28} For the reasons set forth above, we agree with the court of appeals' determination that some evidence in the record supported the commission's finding that Pacheco was medically able to perform the light-duty job that Alcoa made available to him, but we conclude that the court of appeals should not have determined whether the job was objectively offered in good faith and should not have issued a writ on that basis. Accordingly, we affirm in part and reverse in part the court of appeals' judgment, and we issue a limited writ ordering the commission to determine in the first instance whether Alcoa offered the light-duty job in good faith and to issue a new order.

Judgment affirmed in part

and reversed in part,

and limited writ granted.

O'CONNOR, C.J., and FRENCH, FISCHER, and DONNELLY, JJ., concur.

DEWINE, J., concurring in part and dissenting in part, with an opinion joined by KENNEDY and STEWART, JJ.

_____

**DEWINE, J., concurring in part and dissenting in part.**

{¶ 29} I agree with the majority that the record supports the Industrial Commission's finding that Alfredo Pacheco was medically able to perform his light-duty job. But I do not agree that the case should be remanded to the commission to determine whether the job had been offered to Pacheco in good faith. The question before the commission on Pacheco's application for a new period of temporary total disability ("TTD") benefits was whether Pacheco was medically able to perform his light-duty job. Because I do not think that the good-faith-offer requirement of Ohio Adm.Code 4121-3-32(A)(6) has any bearing on whether Pacheco is entitled to TTD benefits, I dissent from the majority's remand of the case back to the commission.

{¶ 30} After being injured on the job and receiving TTD benefits for a time, Pacheco accepted Alcoa's offer of light-duty employment and returned to work. He performed his new light-duty job for three weeks and then quit showing up for work. He subsequently filed an application for a new period of TTD benefits, commencing on his last day of work. He attached documentation from a treating physician alleging that he was medically unable to perform the job. The commission reviewed Pacheco's treatment records and found that he was able to perform the duties of the new position, and the court of appeals concluded that some evidence in the record supported the commission's finding. Nonetheless, the court of appeals granted a writ of mandamus on the basis that the light-duty position had not been offered in good faith under Ohio Adm.Code 4121-3-32(A)(6). 2017-Ohio-

8971, ¶ 36. The majority now remands the case to the commission to determine in the first instance whether the position had been offered in good faith.

{¶ 31} The problem is that the good-faith-offer requirement of Ohio Adm.Code 4121-3-32(A)(6) is not applicable to Pacheco's claim for a new period of TTD benefits. R.C. 4123.56 provides for the payment of benefits during the time that an employee suffers from a TTD. It also contains an employer defense that allows for the termination of benefits when the employee has been offered suitable employment and has refused the job: TTD payments "shall not be made for the period * * * when work within the physical capabilities of the employee is made available by the employer or another employer." R.C. 4123.56(A). Ohio Adm.Code 4121-3-32(A)(6) provides guidance as to this employer defense, further defining what constitutes an offer that terminates the employer's duty to pay TTD benefits:

> "Job offer" means a proposal, made in good faith, of suitable employment within a reasonable proximity of the injured worker's residence. If the injured worker refuses an oral job offer and the employer intends to initiate proceedings to terminate temporary total disability compensation, the employer must give the injured worker a written job offer at least forty-eight hours prior to initiating proceedings. The written job offer shall identify the position offered and shall include a description of the duties required of the position and clearly specify the physical demands of the job. If the employer files a motion with the industrial commission to terminate payment of compensation, a copy of the written offer must accompany the employer's initial filing.

14

**{¶ 32}** Thus, by its plain terms, the good-faith requirement applies to the termination of TTD benefits based on an employer's offer of employment. The good-faith requirement comes into play when an employee has refused an offer of employment and the question is whether "work within the physical capabilities of the employee [has been] made available." R.C. 4123.56(A). But here, there is no issue about the termination of TTD benefits based on an offer of employment; instead, the question is whether Pacheco should be granted a new period of TTD benefits.

**{¶ 33}** In grafting the Ohio Adm.Code 4121-3-32(A)(6) good-faith-offer requirement into the analysis of whether Pacheco is entitled to a new period of TTD benefits, the majority relies on *State ex rel. Ellis Super Valu, Inc. v. Indus. Comm.*, 115 Ohio St.3d 224, 2007-Ohio-4920, 874 N.E.2d 780, ¶ 13. But that case is plainly inapplicable. In *Ellis*, the employee had rejected the employer's offer of alternative employment and the question was whether that employment had been offered in good faith. There is nothing in *Ellis* that has any bearing on the question we have here: whether Pacheco is entitled to a new period of TTD benefits after he has accepted a new job and returned to work.

**{¶ 34}** Indeed, the Tenth District Court of Appeals has twice previously found it unnecessary to consider whether an offer of alternative employment was made in good faith after the employee has accepted the offer of a new position. *See State ex rel. Adkins v. Indus. Comm.*, 10th Dist. Franklin No. 07AP-975, 2008-Ohio-4260, ¶ 54; *State ex rel. Jacobs v. Indus. Comm.*, 10th Dist. Franklin No. 11AP-262, 2012-Ohio-3763, ¶ 9, *aff'd*, 139 Ohio St.3d 86, 2014-Ohio-1560, 9 N.E.3d 999.

**{¶ 35}** The majority spills a lot of ink attempting to distinguish these cases on the basis that they dealt with employees who had been terminated for not showing up to work in their new positions. But the majority fails to explain how this purported distinction makes a whit of difference. In those cases, just like the

present one, the good-faith-offer requirement did not apply because the employee had already accepted the offer of new employment.

{¶ 36} Further, there is little practical distinction between this case and the *Adkins* and *Jacobs* cases that the majority discounts. In all instances, after initially accepting an offer of new employment, the employee refused to perform the new job. In *Adkins* and *Jacobs*, the employees quit coming to work and were formally fired; here, Pacheco just quit going to work—work that the majority agrees Pacheco was medically able to perform. Whether an employee doesn't show up to work and receives a formal termination notice or simply stops showing up to work, the result is the same: the employee has refused to perform his new position. It makes little sense to suggest, as the majority does, that in the former circumstance the commission need not inquire into whether the employment offer was made in good faith but must do so in the latter.

{¶ 37} Indeed, such a distinction flies in the face of our recent holding that "[t]here is no logical distinction between discharge and voluntary resignation for purposes of temporary-total-disability compensation." *State ex rel. Klein v. Precision Excavating & Grading Co.*, 155 Ohio St.3d 78, 2018-Ohio-3890, 119 N.E.3d 386, ¶ 26. Similarly, there is no logical distinction between a worker who stops going to work and receives a formal termination notice and a worker who simply stops performing a job that he is medically able to perform. One wonders, would the majority really reach a different result in this case if Alcoa had sent Pacheco a formal notice of termination after he stopped performing his new position?

{¶ 38} By its plain terms, the good-faith-offer requirement of Ohio Adm.Code 4121-3-32(A)(6) does not apply to a new application for TTD benefits after an employee has accepted a new position and returned to work. I can't find any reason to depart from the plain language of the regulation. Because the

16

majority sees it differently, I respectfully dissent from that part of the majority's opinion.

KENNEDY and STEWART, JJ., concur in the foregoing opinion.

_____

Shapiro, Marnecheck & Palnik, Matthew A. Palnik, and Elizabeth M. LaPorte, for appellee and cross-appellant Alfredo Pacheco.

Dave Yost, Attorney General, and Eric J. Tarbox, Assistant Attorney General, for appellant and cross-appellee Industrial Commission.

Frantz Ward, L.L.P., Maris J. McNamara, Daniel A. Ward, and Michael C. Nunnari Jr., for cross-appellee and appellant Aluminum Company of America.

Vorys, Sater, Seymour & Pease, L.L.P., and Robert A. Minor, urging reversal for amicus curiae Ohio Self-Insurers Association.

Garvin & Hickey, L.L.C., Preston J. Garvin, and Michael J. Hickey, urging reversal for amicus curiae Ohio Chamber of Commerce.

_____