NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-5371

THE STATE EX REL. PAPAGEORGIOU, APPELLANT, *v.* AVALOTIS CORPORATION ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Papageorgiou v. Avalotis Corp.*, Slip Opinion No. 2025-Ohio-5371.]**

*Workers' compensation—Industrial Commission did not abuse its discretion in denying claimant's request for temporary-total-disability compensation after finding that he had voluntarily abandoned his employment by not accepting employer's job offer of light-duty work following work-related injury—Court of appeals' judgment denying writ of mandamus affirmed.*

(No. 2025-0429—Submitted August 19, 2025—Decided December 3, 2025.)

APPEAL from the Court of Appeals for Franklin County,

No. 23AP-689, 2025-Ohio-846.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.

**Per Curiam.**

{¶ 1} Appellant, Evangelo Papageorgiou, was injured in the course of his employment with appellee Avalotis Corporation. Appellee Industrial Commission of Ohio denied Papageorgiou's request for temporary-total-disability ("TTD") compensation, finding that he had voluntarily abandoned his employment with Avalotis by not accepting its job offer of light-duty work. Papageorgiou filed a complaint in the Tenth District Court of Appeals, seeking a writ of mandamus directing the commission to vacate its order and either grant TTD compensation or hold a new hearing. The Tenth District denied the writ, and Papageorgiou has appealed. For the reasons that follow, we affirm the Tenth District's judgment.

## I. BACKGROUND

{¶ 2} Papageorgiou suffered a work-related neck injury while operating a sandblaster on May 25, 2018, and underwent surgery later that day. His workers' compensation claim was allowed for a "high pressure blast injury with complex abrasion with embedded foreign bodies right chin and neck; cervical sprain; cervical strain; [and] head contusion." Avalotis continued paying his wages from the date of the injury.

{¶ 3} On June 5, 2018, one of the surgeons who had operated on Papageorgiou concluded that he could return to light-duty work with a no-heavy-lifting restriction. A few weeks later, Papageorgiou's treating physician, Dr. John L. Dunne, evaluated him and completed a MEDCO-14 Physician's Report of Work Ability form ("MEDCO-14 report"), indicating that Papageorgiou was restricted from bending, squatting, kneeling, twisting, turning, climbing, or lifting more than 10 pounds but that he could occasionally reach above his shoulder and lift up to ten pounds.

{¶ 4} On June 28, 2018, an Avalotis project manager handed Papageorgiou a letter offering him light-duty work and advised him to report to a job site the

2

following day. The offer letter stated that in accordance with Papageorgiou's recent medical visit, Avalotis would accommodate his return to work with a no-heavy-lifting restriction and that his new duties would include any of the following: "[s]orting hardware associated with the rigging removal," general-area housekeeping, "[c]rane/[a]erial lift spotter," assisting with traffic control, "[p]aint log recorder," and managing general inventory.

{¶ 5} Dr. Dunne reviewed the light-duty job offer and agreed in a July 2 letter that Papageorgiou was able to perform the new duties, provided that they would be performed on the ground and would not involve looking or working overhead for long periods or lifting more than approximately 20 pounds.

{¶ 6} Papageorgiou, however, did not report to work in the light-duty position. As a result, Avalotis stopped paying his wages and advised him that his employment had been deemed abandoned.

{¶ 7} Papageorgiou later requested TTD compensation commencing the day after his injury. Avalotis opposed the request on the basis that Papageorgiou had been terminated for refusing light-duty work. After a hearing, a district hearing officer ("DHO") for the commission granted Papageorgiou's request, ordering TTD compensation to commence after June 28, 2018, based on the DHO's finding that Papageorgiou was paid his wages in lieu of TTD compensation from the date of the injury, May 25, through June 28. The DHO rejected Avalotis's position that Papageorgiou had voluntarily abandoned his position by not accepting the light-duty job offer, because that offer stated only that Avalotis could accommodate the no-heavy-lifting restriction and did not address the other restrictions identified in Dr. Dunne's MEDCO-14 report.

{¶ 8} Avalotis appealed. A staff hearing officer ("SHO") for the commission agreed with the DHO that Papageorgiou was paid wages in lieu of TTD compensation from the date of his injury through June 28. However, the SHO denied Papageorgiou's request for TTD compensation after June 28, finding that

he had voluntarily abandoned his employment by not accepting the light-duty position, which his treating physician, Dr. Dunne, had indicated he could perform.

{¶ 9} The commission declined to accept Papageorgiou's appeal of the SHO's order, which thus became the commission's final order. *See* R.C. 4121.35(C).

{¶ 10} Papageorgiou filed a complaint for a writ of mandamus in the Tenth District, alleging that the commission had abused its discretion in denying his request for TTD compensation and seeking an order either granting him TTD compensation or remanding the matter for a new hearing. A magistrate determined that the SHO's order failed to set forth sufficient findings to support the SHO's decision, including whether Avalotis had made the light-duty job offer in good faith. 2025-Ohio-846, ¶ 48-49 (10th Dist.). Therefore, the magistrate recommended that the Tenth District grant a limited writ remanding the matter to the commission to issue an amended order. *Id.* at ¶ 49-50. The commission and Avalotis filed objections.

{¶ 11} The Tenth District found that the magistrate had misapplied the law, sustained the objections in part, and denied the writ. *Id.* at ¶ 12-13. Papageorgiou has filed this direct appeal.

## II. STANDARD OF REVIEW

{¶ 12} To be entitled to a writ of mandamus, a relator must show by clear and convincing evidence that he or she has a clear legal right to the requested relief, that the commission has a clear legal duty to provide that relief, and that the relator has no adequate remedy in the ordinary course of the law. *State ex rel. Zarbana Industries, Inc. v. Indus. Comm.*, 2021-Ohio-3669, ¶ 10. In a workers' compensation mandamus appeal, a writ of mandamus may lie when there is a legal basis to compel the commission to perform its duties under the law or when the commission has abused its discretion in carrying out its duties. *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 2008-Ohio-1593, ¶ 9. "Where a commission order

is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm.*, 1997-Ohio-181, ¶ 16. However, a writ of mandamus may be issued against the commission if it "has incorrectly interpreted Ohio law." *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65 (1975).

### III. ANALYSIS

{¶ 13} The purpose of TTD compensation is to compensate injured workers for their loss of earnings while the injury heals. *State ex rel. Dillon v. Indus. Comm.*, 2024-Ohio-744, ¶ 6. To qualify for TTD compensation, "'the claimant must show not only that he or she lacks the medical capability of returning to the former position of employment but that a cause-and-effect relationship exists between the industrial injury and an actual loss of earnings.'" *State ex rel. Quest Diagnostics, Inc. v. Indus. Comm.*, 2023-Ohio-2213, ¶ 15, quoting *State ex rel. McCoy v. Dedicated Transport, Inc.*, 2002-Ohio-5305, ¶ 35. In other words, it must appear that but for the work-related injury, the claimant would be gainfully employed. *Id.*

{¶ 14} R.C. 4123.56(A) provides a formula for TTD compensation based on a percentage of the employee's average weekly wage. *State ex rel. AutoZone Stores, Inc. v. Indus. Comm.*, 2024-Ohio-5519, ¶ 16. When Papageorgiou was injured, R.C. 4123.56(A) also provided that payments for TTD compensation "shall not be made" for the following periods:

> [1] when any employee has returned to work, [2] when an employee's treating physician has made a written statement that the employee is capable of returning to the employee's former position of employment, [3] when work within the physical capabilities of the employee is made available by the employer or another

employer, or [4] when the employee has reached the maximum medical improvement.

Former R.C. 4123.56(A), 2017 Sub.H.B. No. 27.

{¶ 15} This case involves the third period when payments shall not be paid: "when work within the physical capabilities of the employee is made available by the employer." The Tenth District found that Avalotis offered Papageorgiou a light-duty position that Dr. Dunne, Papageorgiou's treating physician, determined was within his physical capabilities and that Papageorgiou refused the job offer by failing to show up to work in the light-duty position. Dr. Dunne's July 2, 2018 letter, the Tenth District concluded, constituted some evidence on which the commission could properly deny Papageorgiou's request for TTD compensation under R.C. 4123.56(A). 2025-Ohio-846 at ¶ 11 (10th Dist.).

{¶ 16} On appeal, Papageorgiou asserts four propositions of law. For the reasons that follow, we conclude that none have merit.

**A. Proposition of Law No. 1: Adm.Code 4121-3-32(A)(6)'s Good-Faith-Offer Requirement**

{¶ 17} As his first proposition of law, Papageorgiou asserts that the commission abused its discretion by failing to consider whether Avalotis's light-duty job offer was "a proposal, made in good faith" under Adm.Code 4121-3-32(A)(6). Papageorgiou is correct that the commission did not explicitly find that Avalotis extended the light-duty job offer in good faith. But because Papageorgiou has not established that he properly raised lack of good faith to the commission, that omission does not constitute an abuse of discretion warranting a writ of mandamus.

{¶ 18} We have held that R.C. 4123.56(A) "must be read in pari materia with the Ohio Administrative Code provision that supplements it," Adm.Code 4121-3-32. *State ex rel. Ellis Super Valu, Inc. v. Indus. Comm.*, 2007-Ohio-4920,

6

¶ 13; *see State ex rel. Pacheco v. Indus. Comm.*, 2019-Ohio-2954, ¶ 27. By its terms, Adm.Code 4121-3-32(B) identifies circumstances when TTD compensation "may be terminated," including when the commission finds, after a hearing, that "the employee has received a written job offer of suitable employment," Adm.Code 4121-3-32(B)(2)(d). The administrative rule defines "job offer" as "a proposal, made in good faith, of suitable employment within a reasonable proximity of the injured worker's residence." Adm.Code 4123-3-32(A)(6). "Suitable employment" is separately defined as "work which is within the employee's physical capabilities." Adm.Code 4121-3-32(A)(3).

{¶ 19} We have also held that whether an employer extended a job offer in good faith is a factual determination that the commission should make in the first instance. *Ellis Super Valu* at ¶ 13-14; *Pacheco* at ¶ 15-19, 26-28; *State ex rel. Ryan Alternative Staffing, Inc. v. Moss*, 2021-Ohio-3539, ¶ 8-21. For example, in *Ellis Super Valu*, *Pacheco*, and *Ryan Alternative Staffing*, we returned the matters to the commission because the parties in those cases had disputed the employers' motives in extending light-duty job offers and the commission either had not decided or had not sufficiently explained whether those offers were made in good faith. Specifically, in *Ellis Super Valu* and *Ryan Alternative Staffing*, the injured workers alleged that the job offers lacked good faith because the employers had crafted the job offers with work shifts that they knew the injured workers could not cover. *Ellis Super Valu* at ¶ 1-2, 13; *Ryan Alternative Staffing* at ¶ 4, 9, 19-20. In *Pacheco*, the injured worker alleged that the employer's offer of a light-duty position lacked good faith because the position required him to sit idly in public view as if "on display as a warning to other employees." *Pacheco* at ¶ 3-5, 15.

{¶ 20} In his merit brief submitted to this court, Papageorgiou contends that the commission failed to consider whether Avalotis extended the light-duty job offer in good faith. But the reason that Papageorgiou advances as why the job offer lacked good faith is that it identified only one restriction—i.e., "no heavy lifting"—

even though Dr. Dunne's MEDCO-14 report included restrictions on bending, squatting, kneeling, twisting, turning, climbing, and reaching. Thus, although Papageorgiou uses lack-of-good-faith language in asserting his first proposition of law, it is actually a suitable-employment argument. That is, whether the light-duty job that Avalotis offered was within Papageorgiou's physical capabilities was an issue of "suitable employment," Adm.Code 4121-3-32(A)(3), not whether the job offer was "made in good faith," Adm.Code 4121-3-32(A)(6).

{¶ 21} In his July 2 letter, Dr. Dunne said that after reviewing Avalotis's light-duty job offer, Papageorgiou could perform the duties specified (with noted restrictions). Relying on Dr. Dunne's letter, the commission found that Avalotis had offered Papageorgiou a light-duty position that his physician "sign[ed] off on and indicate[d] that he would be able to perform." Therefore, the commission considered whether the job offer was within Papageorgiou's physical restrictions— but that consideration was relevant to whether the job offer constituted "suitable employment," Adm.Code 4121-3-32(A)(3), not whether Avalotis extended the job offer in good faith. Papageorgiou has not presented any argument on appeal to show a lack of good faith on Avalotis's part, such as by alleging that Avalotis created a position with work shifts that it knew he could not cover or that Avalotis offered a certain position to embarrass him. Nor has Papageorgiou asserted that he raised such a lack-of-good-faith allegation before the commission.

{¶ 22} The commission does not abuse its discretion by failing to explicitly decide an issue not raised by the party complaining on appeal about the commission's purported inaction. *See, e.g.*, *State ex rel. Quarto Mining Co. v. Foreman*, 1997-Ohio-71, ¶ 20-21 (commission did not abuse its discretion by failing to initiate an issue that was not raised administratively). If a claimant does not raise an argument during administrative proceedings, he is barred from doing so in a subsequent mandamus proceeding. *State ex rel. Schlegel v. Stykemain Pontiac Buick GMC, Ltd.*, 2008-Ohio-5303, ¶ 17-21.

{¶ 23} Here, because there is no indication that Papageorgiou actually raised a good-faith argument during the commission proceedings, (1) the commission did not abuse its discretion by not explicitly determining that Avalotis's job offer was extended in good faith and (2) the matter need not be remanded to the commission to make that determination. Accordingly, we reject Papageorgiou's first proposition of law.

**B. Proposition of Law No. 2: Adm.Code 4121-3-32(B)(1)(b)**

{¶ 24} As his second proposition of law, Papageorgiou asserts that Adm.Code 4121-3-32(B)(1)(b) "makes clear that a treating physician's indication that a claimant could return to his former position of employment or other available suitable employment *is only a basis to terminate on-going TTD* compensation," not a basis to prevent payment of an initial period of TTD compensation. (Emphasis in original.) Therefore, the commission erred, Papageorgiou contends, by relying on Dr. Dunne's July 2 letter to deny Papageorgiou's first request for TTD compensation.

{¶ 25} As noted above, Adm.Code 4121-3-32(B) identifies circumstances when TTD compensation "may be terminated." Adm.Code 4121-3-32(B)(1) and (2). One such circumstance is when "[t]he employee's treating physician finds that the employee is capable of returning to his former position of employment or other available suitable employment." Adm.Code 4121-3-32(B)(1)(b). The problem with Papageorgiou's argument, however, is that neither the commission nor the Tenth District explicitly cited Adm.Code 4121-3-32(B)(1)(b) to resolve this matter.

{¶ 26} The Tenth District relied on R.C. 4123.56(A), which states that "payment shall not be made for the period . . . when work within the physical capabilities of the employee is made available by the employer." Because Dr. Dunne's July 2 letter indicated that Papageorgiou could perform the light-duty work, the Tenth District determined that the letter constituted some evidence on which the commission could rely in denying Papageorgiou's request for TTD

compensation under R.C. 4123.56(A). 2025-Ohio-846 at ¶ 10-11 (10th Dist.). Papageorgiou has not challenged the Tenth District's reliance on this statutory language. And to the extent that he believes that Adm.Code 4121-3-32(B)(1)(b) somehow limits the statute's application, it is well settled that "'an administrative rule cannot add [to] or subtract from the legislative enactment'" covering the same subject matter (bracketed text in original), *Wymsylo v. Bartec, Inc.*, 2012-Ohio-2187, ¶ 39, quoting *Amoco Oil Co. v. Petroleum Underground Storage Tank Release Comp. Bd.*, 2000-Ohio-224, ¶ 30.

**{¶ 27}** Moreover, we do not interpret Adm.Code 4121-3-32(B)'s language identifying circumstances when TTD compensation "may be terminated" as foreclosing the commission from considering those same or similar circumstances in other scenarios—such as here, when the commission was asked to decide whether an employee is entitled to TTD compensation after failing to appear for a light-duty position while receiving wages in lieu of TTD compensation.

**{¶ 28}** At bottom, Papageorgiou has not proved that Adm.Code 4121-3-32(B)(1)(b)—or any statute or other administrative rule—clearly prohibited the commission from relying on the opinion of Papageorgiou's own treating physician in deciding Papageorgiou's request for TTD compensation. Therefore, we reject Papageorgiou's second proposition of law.

### C. Proposition of Law No. 3: Voluntary Abandonment vs. Refusing Available Suitable Employment

**{¶ 29}** As his third proposition of law, Papageorgiou asserts that the commission abused its discretion by finding that he had voluntarily abandoned his employment without first considering whether he had voluntarily abandoned the entire workforce, as required by *State ex rel. Ohio State Univ. v. Pratt*, 2022-Ohio-4111. The voluntary-abandonment doctrine, however, is not applicable to the facts here, and although the SHO found that Papageorgiou had voluntarily abandoned

10

his position, that finding was inconsequential to the overall decision and does not amount to an abuse of discretion.

{¶ 30} The voluntary-abandonment doctrine was an affirmative defense to a claim for TTD compensation.[1] *See Quest Diagnostics*, 2023-Ohio-2213, at ¶ 16. In February 2019—when the SHO denied Papageorgiou's application for TTD compensation—we had recently described the doctrine as follows: "[W]hen a workers' compensation claimant voluntarily removes himself from his former position of employment for reasons unrelated to a workplace injury, he is no longer eligible for temporary-total-disability compensation, even if the claimant remains disabled at the time of his separation from employment," *State ex rel. Klein v. Precision Excavating & Grading Co.*, 2018-Ohio-3890, ¶ 29. We later clarified in *Pratt*, 2022-Ohio-4111—the case relied on by Papageorgiou—that despite some of *Klein*'s language, we had not meant to change the focus from abandonment of the *workforce* to abandonment of the employee's *former position*. *Pratt* at ¶ 21-24. Even after *Klein*, the key question remained "whether an injured worker who is no longer in the former position has abandoned the workforce, not merely abandoned the former position," *Pratt* at ¶ 18; *accord id.* at ¶ 24.

{¶ 31} The defense of voluntary abandonment, however, was and remains distinct from the defense of refusing available suitable employment. *See Ellis*, 2007-Ohio-4920, at ¶ 6; *Pacheco*, 2019-Ohio-2954, at ¶ 24. The latter is a direct result of R.C. 4123.56(A)'s language prohibiting the payment of TTD compensation "when work within the physical capabilities of the employee is made available by the employer or another employer." *See Ellis* at ¶ 6. This language

---

1. The General Assembly amended R.C. 4123.56, effective September 15, 2020, by adding division (F), which expresses "the intent of the general assembly to supersede any previous judicial decision that applied the doctrine of voluntary abandonment to a claim brought under this section." The amendment applies to claims pending on or arising after the effective date, 2020 Am.Sub.H.B. No. 81, § 3, and therefore does not apply to Papageorgiou's case. *See AutoZone Stores*, 2024-Ohio-5519, at ¶ 18.

was added to R.C. 4123.56(A) "to provide that a claimant who was offered a job within his or her physical capacities could not receive temporary total disability compensation if he or she refused that job." *Ellis* at ¶ 11. Under those circumstances, it is the injured worker's refusal of the job offer of suitable employment that results in the employee's loss of wages.

{¶ 32} Papageorgiou contends that there was no evidence indicating he voluntarily abandoned the entire workforce and that therefore, under *Pratt*, the commission erred in finding voluntary abandonment. However, whether Papageorgiou intended to abandon the entire workforce was not the relevant issue before the commission, nor is it relevant for purposes of this appeal. Despite the SHO's use of the phrase "voluntary abandonment of employment," the overall rationale of the SHO's decision was that Papageorgiou was not entitled to TTD compensation because he had refused Avalotis's light-duty job offer. In other words, the SHO's finding that Papageorgiou had voluntarily abandoned his position was inconsequential because the thrust of the decision was that Avalotis had made work available within Papageorgiou's physical capabilities—as determined by his own treating physician—but Papageorgiou refused the job offer of suitable employment and was therefore not entitled to TTD compensation. *Accord State ex rel. Sebring v. Indus. Comm.*, 2009-Ohio-5258, ¶ 25-26 (a commission order mistakenly citing the seminal decision on voluntary abandonment in a case involving refusal of available suitable employment was inconsequential and not a basis for issuing a writ of mandamus).

{¶ 33} Because the voluntary-abandonment doctrine was not applicable here, the SHO was under no obligation to independently consider or determine whether Papageorgiou had abandoned the entire workforce under *Pratt*. We therefore reject Papageorgiou's third proposition of law.

### D. Proposition of Law No. 4: Reliance on Dr. Dunne's July 2 Letter

{¶ 34} As his fourth proposition of law, Papageorgiou contends that because Avalotis's job offer did not set forth the physical requirements for the light-duty position, the job offer was "legally deficient" and Dr. Dunne had no basis to conclude that the position was within Papageorgiou's physical capabilities. Papageorgiou, however, cites no authority under this proposition of law supporting the contention that the job offer was "legally deficient." Because he seeks the extraordinary remedy of a writ of mandamus, Papageorgiou bears the burden of establishing that he has a clear legal right to the relief requested and that the commission had a clear legal duty to provide it. *See State ex rel. Byk v. Indus. Comm.*, 2025-Ohio-2044, ¶ 39. By not developing this argument on appeal and supporting it with appropriate legal authorities, he has failed to carry that burden.

{¶ 35} To the extent that Papageorgiou is relying on language within Adm.Code 4121-3-32(A)(6)'s definition of "job offer," such reliance is misplaced. Adm.Code 4121-3-32(A)(6) provides:

> "Job offer" means a proposal, made in good faith, of suitable employment within a reasonable proximity of the injured worker's residence. If the injured worker refuses an oral job offer and the employer intends to initiate proceedings to terminate temporary total disability compensation, the employer must give the injured worker a written job offer at least forty-eight hours prior to initiating proceedings. The written job offer shall identify the position offered and shall include a description of the duties required of the position and *clearly specify the physical demands of the job*. If the employer files a motion with the industrial commission to terminate payment of compensation, a copy of the written offer must accompany the employer's initial filing.

(Emphasis added.)

**{¶ 36}** Papageorgiou has not established that the conditions triggering the above-italicized language have been met. Specifically, Papageorgiou has not proved that he orally refused a job offer or that Avalotis intended to initiate proceedings to terminate TTD compensation. Therefore, to the extent that Papageorgiou's fourth proposition of law relies on Adm.Code 4121-3-32(A)(6) as proof that Avalotis's job offer was "legally deficient," he has failed to establish that that language applies to the facts of his case.

## IV. CONCLUSION

**{¶ 37}** For the reasons stated above, Papageorgiou has not established that he is entitled to relief in mandamus. We affirm the judgment of the Tenth District Court of Appeals.

Judgment affirmed.

_____

Nager, Romaine & Schneiberg, Co., L.P.A., Jerald A. Schneiberg, Catherine Lietzke, and C. Bradley Howenstein, for appellant.

Quintairos, Prieto, Wood & Boyer, P.A., Robert J. D'Anniballe Jr., and Sydney N. Croft, for appellee Avalotis Corporation.

Dave Yost, Attorney General, and Cindy Albrecht, Assistant Attorney General, for appellee Industrial Commission of Ohio.

_____